JAMES L. DALLAS *vs.* COMMISSIONER OF PUBLIC HEALTH & others.

Suffolk.    May 17, 1973. — February 26, 1974.

Present: HALE, C.J., GOODMAN, & KEVILLE, JJ.

*Civil Service.*

Where it appeared in a mandamus proceeding that the petitioner had held the position of sanitary engineer in the Department of Public Health, a position having the protection afforded by G. L. c. 31, § 43 (a), that with his consent he was transferred upon a provisional appointment to a newly established temporary position of director of air pollution and radiological health, and that without his consent or compliance with § 43 (a) he was removed from the position of such director and placed in a position in a lower job group in the general salary schedule for employees of the Commonwealth, a contention by him, that by reference to a certain memorandum of the Commissioner of Public Health and on testimony of the petitioner there was such identity between the duties of the position of sanitary engineer and the duties of the position of such director as shown by its official job specifications that the position of such director also had the protection of § 43 (a), was without merit in view of the official job specifications of the position of sanitary engineer showing that the duties of the two positions were essentially dissimilar. [770-774]

A contention, that, because of asserted identity between the duties of a permanent position of sanitary engineer in the Department of Public Health and the duties of a new, temporary position of director of air pollution and radiological health in that department, the director of personnel and standardization erred in establishing such new position and instead should have reclassified the existing position of sanitary engineer under the new title and reallocated it to a higher job group in the general salary schedule for employees of the Commonwealth, was without merit where it appeared that the duties of the two positions were essentialy dissimilar and that in a schedule of positions approved by the Joint Committee on Ways and Means and furnished to the director of personnel and standardization under a certain appropriation act and G. L. c. 30, § 45 (5), the new position was listed under the heading "New Temporary Positions" and was not referred to under the heading "Reallocations." [774-776]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on May 12, 1972, and ordered transferred to the Superior Court.

The case was heard by *Kalus, J.*

*Mark J. Dalton* for the petitioner.

*Charles M. Furcolo,* Assistant Attorney General, for the Commissioner of Public Health.

HALE, C.J. This is a petition for a writ of mandamus brought under G. L. c. 31, § 46A, to restore the petitioner to a position in the Department of Public Health from which, he alleges, he was unlawfully removed. The Commissioner of Public Health, the director of civil service and the director of personnel and standardization are named as respondents. The petitioner appeals from an order that his petition be dismissed. The evidence is reported.

In June, 1958, the petitioner took a qualifying civil service examination for promotion to a permanent position in the Department of Public Health entitled *sanitary engineer.* He was certified for permanent appointment to that position in the same year. The position was allocated to job group twenty-three of the general salary schedule for commonwealth employees pursuant to G. L. c. 30, § 45(4),[1] and remained so allocated until 1970.

___

[1] Section 45(4) has at all times material hereto provided: "In pursuance of his said responsibilities as to the said pay plan [of the commonwealth], the director of

In July, 1968, the petitioner received a provisional appointment to a newly established temporary position in the same department entitled *director of air pollution and radiological health.* This amounted to a temporary promotion since the new position was allocated to job group twenty-six of the salary schedule. His transfer thereto was accomplished with his written consent and without impairment of his tenure in his permanent position of *sanitary engineer.* He has never taken a civil service examination for the new position and has never been certified to it by the director of civil service.

On November 17, 1971, the petitioner was relieved of his duties as *director of air pollution and radiological health* without his consent and without a hearing. At that time he was not returned to the position formerly held by him of *sanitary engineer,* but to a position in the Department of Public Health entitled *supervising sanitary engineer.* This was because in 1970, while the petitioner was still serving as *director of air pollution and radiological health,* all positions entitled *sanitary engineer* had been reclassified[2] under the new title of *supervising sanitary engineer* and reallocated from job group twenty-three to job group twenty-four of the general salary schedule.

1. The petitioner's principal contention is that his removal from the position of *director of air pollution and radiological health*[3] was unlawful because it was not ef-

---

personnel and standardization shall allocate, as provided in paragraph five of this section, each such office or position to the appropriate job group in the salary schedule set forth in section forty-six . . . and he may from time to time, in like manner, reallocate any such office or position. In so allocating or reallocating any such office or position, the said director shall use standard, objective methods and procedures for evaluating the same so that the principle of fair and equal pay for similar work shall be followed; and all offices and positions in the same class shall be allocated to the same job group."

[2] General Laws c. 30, § 45(1) (as amended through St. 1965, c. 749, § 1) provides, with exceptions not here material that the director of personnel and standardization "shall classify all appointive offices and positions in the government of the commonwealth . . . and he may from time to time reclassify any such office or position.

[3] In his brief the petitioner analyzes the events of November 17, 1971, alternately as a removal, a transfer and a demotion. Since we believe these distinctions immaterial to the outcome of his case, we refer to those events as the petitioner's "removal" in the interests of simplicity.

fected in accordance with G. L. c. 31, § 43(a) (as amended through St. 1970, c. 72, § 1).

While § 43(a) confers tenure on certain public employees and imposes notice and hearing requirements not observed in the present case for the removal of any such employee, that section applies only to the removal of a "person holding office or employment *under permanent appointment* . . . from such office or employment without his consent . . ." (emphasis supplied). "Permanent appointment" is defined by G. L. c. 31, § 1 (as amended through St. 1945 c. 703, § 1), as "an appointment to a *permanent position* made in accordance with this chapter and the rules made thereunder . . ." (emphasis supplied). The position of *director of air pollution and radiological health* was only a *temporary* one. Moreover, the petitioner's appointment thereto was only a *provisional* one, defined by G. L. c. 31, § 1 (as amended through St. 1945 c. 703, § 1), as "an appointment authorized on a requisition where there is no suitable eligible list." In the case of a provisional employee there is "no tenure, no right of notice or hearing, no restriction of the power to discharge . . .." *Sullivan* v. *Commissioner of Commerce & Dev.* 351 Mass. 462, 465 (1966).

The petitioner argues, however, that his duties as *sanitary engineer* were identical to those as *director of air pollution and radiological health,* that the latter title was merely a new name for the position in which he held tenure, and hence that the tenure he had in his old title was transmitted to the new one, so as to render it subject to all the requirements of G. L. c. 31, § 43(a). He seeks to establish this identity of duties by reference to a memorandum setting forth what purport to be the duties of and qualifications for the position of *sanitary engineer,* which appears to have been sent by the Commissioner of Public Health to the director of civil service by a letter dated March 6, 1958, in connection with the civil service examination given for that position in the following June. According to this memorandum, a copy of which was introduced in evidence without objection, the holder of that

position was to "have oversight... of the engineering activities of the Division of Sanitary Engineering [of the Department of Public Health] in matters pertaining to radiological health and atmospheric pollution...." In this and other respects, the duties of *sanitary engineer* as presented in the memorandum are strikingly similar to those of *director of air pollution and radiological health* as set forth in the job specifications for that position.[4] The petitioner testified that the duties he actually performed as *sanitary engineer* were as described in the 1958 memorandum and were the same as those he performed as *director of air pollution and radiological health.*[5]

The duties set forth in the 1958 memorandum and those appearing in the job specifications for *director of air pollution and radiological health,* however, bear little resemblance to the duties of *sanitary engineer* disclosed by the job specifications for that position. Those specifications, which had been on file as of 1956, contain no reference to "radiological health," "atmospheric pollution" or anything akin thereto. Rather, they provide that the appointee to the position shall supervise "one of the three major sections of the Sanitary Engineering Division... performing difficult sanitary engineering work," and identify those three sections as "Water Supply," "Water Pollution Control" and "Community Sanitation." For this reason the trial judge cannot be said to have been wrong in finding that "the position of *Sanitary Engineer*... has been, at all times, distinct, separate and different from the position of

---

[4] Under G. L. c. 30, § 45(1) (as amended through St. 1965, c. 749, § 1) as a part of his duties in the classification of commonwealth offices and positions, the director of personnel and standardization "for each such class shall establish specifications which shall include (i) an appropriate descriptive title and code number for the class, which shall be the official title of all offices and positions in the class and shall be set forth on all pay rolls by name or code, and (ii) the common features of the duties, responsibilities, organizational relationships, qualifications for, and other significant characteristics of all offices and positions in the class...."

[5] The petitioner also asserts in his brief that the civil service examination he took for the position of *sanitary engineer* in 1958 conformed to the matter set forth in the 1958 memorandum. However, neither the examination itself nor any evidence of its content was introduced in evidence.

*Director of Air Pollution and Radiological Health . . .* " (emphasis supplied).

The petitioner contends that the 1958 memorandum must prevail over the job specifications in determining his duties as *sanitary engineer* and that the foregoing finding was therefore based on a misapprehension of law. He relies on the role assigned appointing authorities in the preparation of examinations under G. L. c. 31, § 2A(d).[6] But even if § 2A(d) can be read as supporting the proposition that a "statement, filed by the appointing authority" thereunder, even if not approved by the director of civil service, takes precedence over official job specifications in determining the duties of a position — a proposition which we need not rule upon — the short answer to the petitioner's contention is that the provisions of § 2A(d) he relies upon were not inserted in that statute until many years after he had taken his examination and obtained tenure as *sanitary engineer.*[7] Those provisions (see fn. 8) were inserted by St. 1968,

---

[6] General Laws c. 31, § 2A(d), as amended through St. 1968, c. 469, contains the following provisions concerning the duties of the director of civil service in preparing the notice for a civil service examination for a commonwealth position: "If, in preparing the notice for any examination for an office or position in the service of the commonwealth, the director [of civil service] believes the specifications previously approved in accordance with section forty-five of chapter thirty are insufficient to describe the office or position for the purposes of conducting the examination, he may include in such notice such additional or qualifying information as he deems necessary so to describe the office or position. No such notice shall be prepared and posted by the director until he has received from the appointing authority all information which he has requested regarding the duties of such office or position and until he has approved a statement, filed by the appointing authority with him in such form as he shall prescribe, which sets forth the qualifications for such office or position and a proposal as to the type of examination desired and entrance requirements therefor. A copy of every such notice shall be filed with the specifications maintained pursuant to said section forty-five."

[7] The corresponding provisions of G. L. c. 31, § 2A(d), which were in effect throughout 1958, were inserted by St. 1954, c. 680, § 17: "If in performing said duties the director [of civil service] proposes to change any specifications previously approved in accordance with section forty-five of chapter thirty, he shall submit such proposed changes to the director of personnel and standardization for his prior review and written comment; and they shall not be effective if within five work days following their submission to him the said director [of personnel and standardization] shall object to them in writing to the director of civil service; provided, however, that if in such case the director of civil service and the director of personnel and standardization shall be unable to agree in such changes in specifications, the same shall, for the purposes of the said classification plan, be determined by the commission on administration and finance."

c. 469, "An Act authorizing the director of civil service to supplement job specifications in preparing notices for examinations." Prior to the 1968 amendment of § 2A(d), the director of civil service was bound by the job specifications in preparing examinations, and could supplement or deviate from those specifications only by effecting their amendment in accordance with § 2A(d) as then in effect (see fn. 7). At best, then, the 1958 memorandum can be regarded as presenting the suggestions of the Commissioner of Public Health for such an amendment to the specifications. There was no evidence that the director of civil service ever acted on those suggestions.

The trial judge was correct in relying upon the specifications to define the duties legally assigned to the position of *sanitary engineer,* and in ignoring the statement of duties contained in the 1958 memorandum. Nor can we say that the trial judge was plainly wrong in discounting the petitioner's rather general testimony (if material) as to the duties he actually performed in that capacity. See *Massachusetts Mut. Life Ins. Co.* v. *Massachusetts Life Ins. Co.* 356 Mass. 287, 288 (1969). *Gorman* v. *Stein, ante,* 244 (1973).

Since there was no error in the trial judge's finding that the duties of *sanitary engineer* and *director of air pollution and radiological health* were essentially dissimilar, we need not consider the petitioner's contention that the similarity of duties asserted by him would bring his service in the latter position within the scope of G. L. c. 31, § 43(a).

2. The petitioner argues that the director of personnel and standardization committed two errors of law in his treatment of the titles held by the petitioner. First, he contends that the director erred in establishing the title of *director of air pollution and radiological health* as a new position in 1968 but should instead have reclassified the petitioner's existing position of *sanitary engineer* under the new title (see fn. 2) and should have reallocated that position to the higher job group (i.e. twenty-six) associated with that title (see fn. 1). Secondly, the petitioner maintains that the director erred in reclassifying the petitioner's

*sanitary engineer* position as *supervising sanitary engineer,* and in reallocating it from job group twenty-three to job group twenty-four in 1970. The petitioner asks that the director of personnel and standardization be ordered to reclassify and reallocate the petitioner's permanent position to the title of *director of air pollution and radiological health,* "effective as of July 1, 1968, *or* November 17, 1971" (emphasis supplied).

The effect of such a reclassification and reallocation, we assume, would be to clothe the petitioner with tenure in the position of *director of air pollution and radiological health,* and to afford him the rights he asserts under G. L. c. 31, § 43(a), in his previous argument. While we question the soundness of regarding this as an alternate route to inclusion under § 43(a) rather than the same route in a different guise, the parties treat them as independent issues and, for the purposes of this decision, we do the same.

Here again, the petitioner bases his contention on the supposed identity of duties performed by him as *sanitary engineer* and as *director of air pollution and radiological health.* His failure to establish that identity of duties is sufficient to dispose of this contention, as it was his earlier one. Moreover, his assertion of impropriety in the director's treating the new title as a new temporary position, rather than as a continuation of the petitioner's old permanent one, must fail for the further reason that the schedule of positions approved by the Joint Committee on Ways and Means and submitted to the director of personnel and standardization which authorized the new title in 1968 (introduced in evidence by the respondents) listed it under the heading "New Temporary Positions" and omitted any reference to it under the heading "Reallocations." That schedule was issued in connection with the enactment of St. 1968, c. 771, a supplementary appropriation act. Under St. 1968, c. 380, § 6[8] (which is incorporated by reference in

_____

[8] "Amounts included for permanent positions in sums appropriated in section two for personal services are based upon schedules of permanent positions and salary rates as approved by the joint committee on ways and means, and, except as otherwise shown by the files of said committee, a copy of which shall be deposited with the bureau of personnel, no part of sums so appropriated in section

St. 1968, c. 771, § 1), and under G. L. c. 30, § 45(5),[9] the director of personnel and standardization was and continues to be prohibited from reallocating the petitioner's permanent position except in accordance with such a schedule. There was no evidence of any subsequent schedule authorizing the reallocation sought by the petitioner.

The petitioner's claim of illegality in the 1970 reclassification of his permanent position to the title of *supervising sanitary engineer,* like his other contentions, is founded on the assumption that the duties of his permanent position were those contained in the 1958 memorandum — which he now compares with the job specifications of *supervising sanitary engineer* in an attempt to show that the duties of the two positions are essentially dissimilar. A comparison of the job specifications for the two positions, however, discloses substantially the same duties in each, and the trial judge so found. There was no error.

*Order dismissing petition affirmed.*

two shall be available for payment of salaries of any additional permanent position, or for payments on account of reallocations of permanent positions, or for payments on account of any change of salary range or compensation of any permanent position, notwithstanding any special or general act to the contrary . . . ."

[9] "No permanent allocation or reallocation, in accordance with this section, of any office or position subject to the classification and pay plans provided by this section, shall be effected, unless and until . . . (*d*) it shall have been included in a schedule of permanent offices and positions approved by the joint committee on ways and means, a copy of which is on file with the director of personnel and standardization . . . ."