## HUGH P. RAFFERTY vs. COMMISSIONER OF PUBLIC WELFARE & others[1].

Norfolk. May 7, 1985. — September 6, 1985.

Present: GREANEY, C.J., CUTTER, & DREBEN, JJ.

*Public Employment*, Termination, Provisional employee. *Civil Rights*, Termination of employment, Attorney's fees. *Administrative Law*, Exhaustion of remedies. *Contract*, Employment.

In an action brought by a discharged provisional employee of the Department of Public Welfare, the judge erred in ruling that an employee relations memorandum to supervisors and managers, circulated by the department's director of labor relations, afforded the employee a constitutionally protected interest in further employment. [722-723]

A provisional employee of the Department of Public Welfare who had failed to seek an informal hearing under G. L. c. 31, § 41, third par., when he was discharged from employment, even though he had known for some time that his discharge was being contemplated and had acquiesced in, and sought in some degree, postponement of its effective date, was not entitled to obtain judicial review of his discharge by an action for breach of contract. [723-724]

The circumstances in which a provisional employee of the Department of Public Welfare was discharged provided no basis for any claim by the employee of a violation of any implied obligation of good faith in the discharge of an "at will" employee. [724-725]

In an action brought by a provisional employee of the Department of Public Welfare alleging that his discharge deprived him of property without due process of law in violation of 42 U.S.C. § 1983 (1982), it was held on appeal from a judgment in favor of the employee that he was not entitled to recover on his § 1983 claim and, consequently, there was no basis for granting an attorney's fee under 42 U.S.C. § 1988 (1982). [725]

In an action brought by a provisional employee of the Department of Public Welfare arising from his discharge, the judge properly denied the employee recovery for emotional distress where there was no evidence to justify a finding of intentional, extreme, and outrageous conduct, beyond all bounds of decency. [725]

---

[1] The director of the child support enforcement unit of the Department of Public Welfare, and the Commonwealth.

CIVIL ACTION commenced in the Superior Court Department on December 20, 1982.

The case was heard by *B. Joseph Fitzsimmons*, J., sitting under statutory authority.

*Georgianna McLoughlin*, Assistant Attorney General, for Commissioner of Public Welfare & others.

*Barbara J. Saint Andre* for the plaintiff.

CUTTER, J.  Rafferty, on February 22, 1981, was employed by the Department of Public Welfare (department) as assistant director in charge of field operations for the department's child support enforcement unit (the unit). He was a provisional civil service appointee. G. L. c. 31, § 41. The function of the unit, which has about 340 individuals on its staff throughout the Commonwealth, is to collect and supervise child support payments from absent parents. The evidence showed essentially the following course of Rafferty's work for the department.

In June, 1981, Rafferty was told by the unit director, Dennis Sullivan, Rafferty's immediate supervisor, that there were problems with the field staff's supervision of support payments. Sullivan also requested Rafferty not to discuss his personal life with department employees but to deal with them in a professional manner. Earlier, Sullivan had received a complaint from another employee that Rafferty had been discussing his personal background and "sexual prowess" among the staff. Sullivan, however, did not discuss this particular complaint with Rafferty.

During their discussion, Rafferty stated he was unhappy working with Sullivan and complained of the fact that he was not given any direction from superiors or any breadth of authority. He told Sullivan that he was looking for employment elsewhere.

Sullivan again raised with Rafferty the problem of inadequate supervision in October, 1981. Subsequently, in January, 1982, at a group meeting, Sullivan told Rafferty and several area coordinators (subordinates to Rafferty) that he was dissatisfied with the performance in the field. When Rafferty started to criticize the area coordinators, Sullivan told Rafferty that it was his job to see that the area coordinators carried out their tasks.

In June, 1982, Sullivan decided that he was not getting proper effort from Rafferty and transferred him to the Boston office. There he was assigned to work on an Internal Revenue Service project, but his job title, pay, and benefits were not affected. About this time, Rafferty told Sullivan that he had several job prospects and was one of two remaining candidates for a position with a hospital.

In August, 1982, the defendant, Thomas Spirito, then Commissioner of Public Welfare, showed Sullivan a letter that Rafferty had sent to one Webber, an employee in the department's Lynn office, requesting Webber's help in obtaining a job in the department for Rafferty's wife. Sullivan told Rafferty that he had exercised poor judgment in sending the letter. At the same time, Rafferty informed Sullivan that the hospital job would probably materialize in the middle of September.

On October 25, 1982, Rafferty told Sullivan that his job prospects had fallen through and that it appeared likely that he would remain with the department. After discussion of the unit's problems and the letter to Webber, Sullivan advised Rafferty that he should resign. According to Sullivan, Rafferty replied, "If you give me three weeks, I shall leave quietly."[2] Sullivan agreed and checked with Commissioner Spirito, who had no objection. Four days later, Sullivan told Rafferty that he could remain with the department until November 12.[3] Rafferty then claimed that he had certain rights under a document known as Employee Relations Memo-3 (ER-3, discussed below in part 1 of this opinion).

In a memorandum to Sullivan, dated November 8, 1982, Rafferty said he did not intend to leave his job and requested an explanation of the reasons for his termination. On November 17, 1982, Sullivan told Rafferty by letter that he had been discharged, effective at the close of business that day, because

---

[2] Rafferty's testimony was that Sullivan told him that "the director wants you terminated . . . [because of] a personality conflict."

[3] Later that same day, by memorandum, Sullivan told Rafferty that he had informed the personnel department of Rafferty's impending resignation on November 12, 1982.

of "unsatisfactory work performance." Rafferty did not request a hearing before the appointing authority pursuant to G. L. c. 31, § 41, third par.

On December 20, 1982, Rafferty brought this action against the Commissioner (Spirito), the unit director (Sullivan), and the Commonwealth, seeking damages based on (1) alleged deprivation of property without due process of law in violation of 42 U.S.C. § 1983 (1982), (2) intentional infliction of emotional distress, and (3) breach of contract. A jury-waived trial was held before a probate judge, sitting by designation in the Superior Court. The judge, at the close of Rafferty's evidence and at the close of all the evidence, denied requests for the entry of judgment for the defendants. On November 17, 1983, the trial judge made findings[4] and ordered (taking into account later amendments) judgment for Rafferty (a) for one dollar on the § 1983 claim against Sullivan,[5] together with $4,800 as an attorney's fee under 42 U.S.C. § 1988 (1982), and (b) for $28,250.56 for his breach of contract claim against Sullivan and the Commonwealth. The judge dismissed Rafferty's emotional distress claim.

The trial judge ruled (a) that Rafferty was entitled to the benefits of ER-3 and under it had a constitutionally protected property interest in continued employment with the department; (b) that Rafferty was not required to exhaust administrative remedies; (c) that Rafferty's termination was unlawful because not effected in accordance with ER-3; and (d) that Rafferty

---

[4] The judge found: (1) A number of Rafferty's subordinates were slow in "catching up" on paperwork at times but that there was no tangible evidence that any specific field offices were seriously delinquent in collection of support moneys. His "job performance was not shown by the evidence to be measurably deficient." (2) His discussions of his personal life and "frivolous comments were, by the evidence, shown to be without . . . objective reality" and "were hardly . . . transgression[s] worthy of discharge." (3) There was no evidence that Rafferty "brought pressure on any departmental employees to secure . . . employment" for his wife. (4) No credible evidence shows that Rafferty "was anything less than visible and efficient on the job."

[5] A similar judgment against Commissioner Spirito was ordered originally but was vacated by the trial judge sua sponte. He also dismissed Rafferty's claim for breach of contract against Spirito.

was entitled to "back pay" for the time he had been without employment by the department.[6] A single justice of this court stayed portions of the amended judgment on December 28, 1984.

1. ER-3 is a somewhat diffuse memorandum to supervisors and managers of the department, circulated on May 1, 1980, by Kevin D. Preston, then the department's director of labor relations. It begins with the following: "This memo outlines the [d]epartment's policy on employee discipline" and "also details the procedures to be followed in disciplinary matters. The policy and the procedures are applicable to all employees except holders of statutory positions" (with another exception not here relevant). In general it provides for a system of progressive disciplinary measures prior to the discharge of an employee. ER-3 does not appear as a part of the Code of Massachusetts Regulations and has not been shown to have been adopted as a regulation under G. L. c. 18, §§ 8-10. See G. L. c. 30A, §§ 4-7.[7]

The trial judge found that Spirito (by the time of trial a former commissioner) "concedes" that ER-3 "was in place" while Rafferty was an employee of the department and "individually concedes that ER-3 is applicable to" Rafferty. The judge interprets ER-3 to make each covered employee "entitled

---

[6] In his order for judgment, the judge stated specifically that Rafferty did not seek reinstatement. Nevertheless, by amendments to his findings and the ensuing judgment, the judge ordered Rafferty reinstated as assistant to the unit's director.

[7] Paragraph 2.0 of ER-3 defines a "[n]on-tenured" employee as "an employee who has held *neither* a permanent civil service appointment *nor* a position in any collective bargaining unit for six consecutive months" (emphasis original) and notes that "[u]nder statutory and contractual provisions non-tenured employees may be disciplined without 'just cause.'" The paragraph states as a matter of departmental "policy," that disciplinary action initiated against any employee "must be in accordance with the policy and procedures of [ER-3]." Paragraph 5.2 of ER-3 provides that "in cases involving . . . non-tenured employees . . . informal and formal warning processes may be consolidated provided that the employee is made aware of the consequences of failure to improve his . . . performance . . . by the end of the review period." Also, under ER-3, par. 5.3, a nontenured employee need not be suspended prior to discharge.

to a predischarge lock-step process involving informal warning, formal warning, suspension and discharge." He ruled that Rafferty was covered by ER-3 and found that he did not receive the benefits of ER-3 prior to his termination.

We think the trial judge concluded wrongly that ER-3 afforded Rafferty a constitutionally protected interest in further employment. There is no statutory requirement that a provisional employee cannot be removed without proof that the removal is for cause. G. L. c. 31, §§ 14 & 41, third par.[8] ER-3 also deals largely, if not entirely, only with procedures for the termination of a tenured departmental employee. It is not the type of departmental policy statement which can become a "property interest" for purposes of 42 U.S.C. § 1983 (1982). *Beitzell* v. *Jeffrey*, 643 F.2d 870, 874-878 (1st Cir. 1981), dealing with a probationary university teacher. See *Bishop* v. *Wood*, 426 U.S. 341, 344-347 (1976); *Laureano-Agosto* v. *Garcia-Caraballo*, 731 F.2d 101, 103-104 (1st Cir. 1984). See also *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 759-761 (1976); *Moore* v. *Otero*, 557 F.2d 435, 437 & n.6 (5th Cir. 1977); *Bleeker* v. *Dukakis*, 665 F.2d 401, 403 (1st Cir. 1981), holding that personnel policies about warnings and an opportunity for an "at will" employee to correct performance before being discharged for unsatisfactory performance "are insufficient to convert" the employee's "employment interest into constitutionally protected 'property.'"[9]

2. Because Rafferty's claims must arise, if at all, under Massachusetts law (rather than under § 1983) we think that Massachusetts law determines whether he was obliged to

---

[8] Under § 41, as appearing in St. 1978, c. 393, § 11, a provisional employee is entitled to "an informal hearing" in circumstances discussed in part 3 of this opinion. See note 11, *infra*. Rafferty did not request such a hearing. See as to nontenured or provisional employees, *Dallas* v. *Commissioner of Public Health*, 1 Mass. App. Ct. 768, 771-774 (1974); *Cox* v. *Civil Serv. Commn.*, 3 Mass. App. Ct. 793 (1975), and cases cited.

[9] See, as to policy manuals which may go counter to governing statutes and regulations, if any, of higher dignity, *Fiorentino* v. *United States*, 607 F.2d 963, 967-969 (Ct. Cl. 1979). See also *Jimenez* v. *Almodovar*, 650 F.2d 363, 367-370 (1st Cir. 1981); *Atencio* v. *Board of Educ. of Penasco Independent Sch. Dist. No. 4*, 658 F.2d 774, 779-781 (10th Cir. 1981).

exhaust any administrative remedies. He did not claim his rights under G. L. c. 31, § 41, see note 8, *supra*, despite the circumstance that he had known for some time that his discharge was in contemplation and had acquiesced in, and sought in some degree, postponement of its effective date. He has made no showing that taking an administrative appeal would have been futile. See *Shick* v. *Farmers Home Admn. of U.S. Dept. of Agriculture*, 748 F.2d 35, 39-41 (1st Cir. 1984).[10]

In view of what is said in part 3(a) of this opinion we need not and do not decide whether the trial judge was clearly in error in making findings in effect that Sullivan had not complied with ER-3 in the discharge of Rafferty. We note, however, that our reading of the evidence would lead to the conclusion that there had been at least substantial compliance with ER-3.

3. (a) Under G. L. c. 31, § 41, third par.,[11] a provisional or nontenured employee may seek an "informal hearing," which shall be "final," before the appointing authority. See note 8, *supra*. This remedy Rafferty did not pursue (he has referred us to no statute or duly adopted regulation granting a nontenured employee any other remedy). It is afforded under a chapter

---

[10] *Patsy* v. *Regents of Florida*, 457 U.S. 496 (1982), we think, ceases to have any operative effect after it is decided that a cause of action under § 1983 has not been stated.

[11] As appearing in St. 1978, c. 393, § 11, that paragraph reads: "If a person employed under a provisional appointment for not less than nine months is discharged as a result of allegations relative to his . . . work performance and if the reason for such discharge is to become part of his employment record, he shall be entitled, upon his request in writing, to an informal hearing before his appointing authority or a designee thereof within ten days of such request. If the appointing authority, after hearing, finds that the discharge was justified, the discharge shall be affirmed, and the appointing authority may direct that the reasons for such discharge become part of such person's employment record. Otherwise, the appointing authority shall reverse such discharge, and the allegations against such person shall be stricken from such record. *The decision of the appointing authority shall be final*, and notification thereof shall be made in writing to such person and other parties concerned within ten days following such hearing" (emphasis supplied). The first sentence of G. L. c. 31, § 43, appears to require a filing under that section within ten days after the employee first knew of the action about which complaint is made.

which (see e.g., §§ 41-43) lays great importance on the prompt pursuit of administrative remedies. We do not decide whether a State agency can expand upon the rights of a provisional civil service employee by a policy such as that found in ER-3. We hold, however, that Rafferty cannot make a bypass of his unclaimed administrative remedy (which might have involved administrative examination of ER-3 and its validity) and obtain a court review of his discharge by an action for alleged breach of contract.

(b) The circumstances of this case provide no basis for any claim by Rafferty of a violation of any implied obligation of good faith in the discharge of an "at will" employee. See *Cort v. Bristol-Myers Co.*, 385 Mass. 300, 304-306 (1982). He certainly did not lose compensation for any past service. Compare *Fortune* v. *National Cash Register Co.*, 373 Mass. 96 (1977). Compare also *McKinney* v. *National Dairy Council*, 491 F.Supp. 1108 (D. Mass. 1980, which, even if it represents the law of Massachusetts, applies the *Fortune* case in a situation not here presented). The trial judge erred in ordering judgment for Rafferty on any contract claim or claim based upon G. L. c. 31.

4. Because we hold that Rafferty is not entitled to recover upon his claim under 42 U.S.C. § 1983 (1982), there is no basis for granting attorney's fees to him under 42 U.S.C. § 1988 (1982). He now has no basis for contending that he is a "prevailing party." Compare *Stock* v. *Massachusetts Hosp. Sch.*, 394 Mass. 437, 441-442 (1985), and cases cited; *Guardianship of Hurley*, 394 Mass. 554, 558-561 (1985).

5. It is not clear that Rafferty on appeal argues that the trial judge improperly denied him recovery for emotional distress. In any event, we think no evidence justified a finding of intentional, extreme, and outrageous conduct, beyond all possible bounds of decency. See *Beecy* v. *Pucciarelli*, 387 Mass. 589, 596 (1982), and authorities cited.

The judgments for Rafferty are reversed. Judgment (on all counts) is to be entered for each defendant.

*So ordered.*