NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1979                                          Appeals Court


PAUL MENDONCA  vs.  CIVIL SERVICE COMMISSION & another.[1]


No. 13-P-1979.

Suffolk.     September 15, 2014. - December 12, 2014.

Present:  Berry, Kafker, & Carhart, JJ.


Veteran.  Handicapped Persons.  Public Employment, Provisional employee, Termination, Reinstatement of personnel.  Civil Service, Termination of employment, Reinstatement of personnel.  Employment, Termination.  Administrative Law, Substantial evidence.



Civil action commenced in the Superior Court Department on January 13, 2012.

The case was heard by Garry V. Inge, J., on a motion for judgment on the pleadings.


Richard L. Neumeier (Galen Gilbert with him) for the plaintiff.
Iraida J. Alvarez, Assistant Attorney General, for the defendants.


CARHART, J.  Paul Mendonca appeals from the entry of

judgment in favor of the defendants following a Superior Court

---

[1] Executive Office of Labor and Workforce Development.

judge's denial of his motion for judgment on the pleadings. Mendonca had sought review pursuant to G. L. c. 31, § 44, of a decision by the Civil Service Commission (commission) upholding his layoff by the Executive Office of Labor and Workforce Development (EOLWD). Mendonca alleged that the layoff violated his rights as a disabled veteran. We agree and reverse.

Background. Mendonca is a disabled Vietnam War veteran. He holds a bachelor of science degree in business management from Suffolk University, and a master's degree in business administration from the University of Massachusetts. Mendonca's extensive work history includes management, training, and marketing in the human resources field. He has negotiated and managed labor agreements to ensure labor law compliance; he has established and implemented human resources systems for various companies; he has recruited and trained staff; and he has secured competitive State abandoned property audit contracts for private companies.

On May 3, 1999, the Commonwealth hired Mendonca as a provisional Administrator III. A Management Questionnaire (MQ) describing Mendonca's position shows that Mendonca was responsible for administering the Commonwealth's federally funded Job Search/Job Readiness Program (JS/JR). Mendonca worked closely with several State agencies, including the Departments of Transitional Assistance (DTA), Unemployment

Assistance (DUA), and Career Services (DCS), and ensured that JS/JR "[wa]s operated according to Federal, State and contractual requirements." Mendonca's duties included negotiating and drafting interdepartmental service agreements; specifically, he "[r]ecommend[ed] amounts and conditions for reimbursement, scope of services, program requirements, key performance objectives, budget provisions and staffing configurations to ensure contractual goals are achievable."

On March 29, 2007, the human resources division of EOLWD determined that the title Program Coordinator II more accurately reflected Mendonca's duties. However, Mendonca retained the title Administrator III. Mendonca was laid off on April 10, 2008, when his position was eliminated as a result of budget cuts. Four other Administrator III positions existed at that time: Web services manager, deputy director of contracts and procurement (deputy director), Hurley Building superintendent (superintendent), and manager of the office of multilingual services. The individuals holding these positions included one veteran holding a permanent original appointment, and three nonveterans.

The MQ for each respective position lists its requirements. The Web services manager must hold a "Bachelor's degree in Fine Arts" and have five to ten years' experience developing and managing Web sites. The superintendent position "requires a

high degree of technical knowledge in building systems including fire detection/alarm systems; HVAC[2] systems; plumbing and electrical systems; elevator systems; State and local building codes; and [Americans with Disabilities Act] requirements." The superintendent "must be on call 24 hours a day, seven days a week, and must be prepared to immediately bring resources to bear to resolve emergency situations." For example, the superintendent must be able to resolve dangerous building conditions and malfunctioning heating or air conditioning systems. The manager of the office of multilingual services must be bilingual in English and Spanish, and the position "requires mastery of several foreign languages" and a "Linguistics degree." Finally, the deputy director "advise[s] agency personnel on procurement matters associated with the Commonwealth's operations and policy to ensure . . . compliance with all applicable state and federal laws, rules and regulations." The deputy director position entails managing and training staff in matters "relating to procuring goods and services; managing multi-year encumbrances of state and federal funds for Federal/State programs, grants; Interdepartmental Service Agreements and miscellaneous Agreements; writing proposals . . . ; approving attorney fee requests; and contract review." The deputy director analyzes and recommends action on

---

[2] Heating, ventilation, and air conditioning.

issues relating to procurement and contracts with private entities, "ensuring compliance with state and federal laws and Executive Orders."  The position requires "a minimum of an Associate[']s Degree in Accounting and or Business Management," along with five years' experience in accounting, finance, and contract and procurement management.

EOLWD determined that Mendonca could not be retained because he was not qualified for any of the other Administrator III positions.  Mendonca appealed EOLWD's decision to the commission, which held a hearing on August 3, 2009.  David E. Olsen, human resources director for EOLWD, testified that he was responsible for laying off Mendonca.  He noted Mendonca's veteran status and stated that he understood G. L. c. 31 to require "[t]hat veterans shall be retained in title until all other similarly situated offices are eliminated."  Olsen therefore investigated the remaining Administrator III positions to determine whether Mendonca could be retained.

Olsen concluded that Mendonca could not be retained as an Administrator III because the remaining positions were "very different" from Mendonca's job, and "Mendonca's skill and his personnel file, his resume, his background, had always been in either human resources, job placement type of work."  Olsen did not consider Mendonca for any positions outside of the Administrator III title because the positions were "not

similarly situated"; they either had different job classifications or dealt with the public instead of staff.[3] Olsen testified that, in evaluating Mendonca's case, he "was operating within the scope of [his] interpretation of the law."

Dana Johnson testified for Mendonca. Johnson is a rehabilitation counselor. She evaluates individuals to determine "if somebody's under employed or if somebody actually is employable or what it would take to make somebody employable." She often provides expert testimony in insurance and divorce cases. Johnson testified that transferable skills are those "that you can take from one job and bring them to another." Nontransferable skills are those limited to a particular position or field. In Johnson's opinion, Mendonca's position as JS/JR coordinator required transferable skills including: evaluating a government program and determining what training or further resources the employees may need to improve performance; budgeting; handling State reimbursements; coordinating services with other government agencies; and

---

[3] Olsen testified that Administrator III was a "staff oriented" position, meaning it dealt solely with a State agency and its staff. A "line oriented" position deals directly with the public. Mendonca was an Administrator III; however, Olsen testified that Mendonca's duties more closely resembled those of a "Program Manager." Olsen stated that he did not consider Mendonca for any Program Manager positions because "[t]hose jobs were line oriented as opposed to staff oriented," and it would be very unlikely that a "staff oriented" manager would "cross over" to become "line oriented" because it is rare that "[a]n individual could possess both skills."

assessing vendor contracts to ensure that the Commonwealth's money is well spent. Mendonca was required in his position to read, analyze, and follow through on contracts, which Johnson also considers to be transferable skills.

On December 15, 2011, the hearing officer issued a written decision which contained thirty-three findings of facts. Of particular relevance to our discussion is the following finding:

> "30. In regard to the position of Deputy Director of Contracts and Procurement, [Mendonca] has no experience in contract procurement activities and the laws regarding trade and procurement regulations. He has not reviewed procurement contracts, granted agreements or approved fee requests from attorneys representing [DUA], Unemployment Insurance clients. [Mendonca] does not possess knowledge of [EOLWD]'s Affirmative Market Program or of the laws and regulations on trade such as the North American Free Trade Agreement ('NAFTA') and the Trade Adjustment Assistance Act. Furthermore, [Mendonca] does not possess knowledge, skills or abilities relating to the MARS system (the state's accounting system), financial systems, or GAP (general accounting principles) policies and procedures specific to the comptroller's office."

The hearing officer concluded, based on her findings, that (1) Mendonca is not entitled to relief under the Veterans' Tenure Act, G. L. c. 30, § 9A, because his position is "classified"; (2) as a matter of law, Mendonca is not entitled under the Disabled Veterans' Act, G. L. c. 31, § 26, to an absolute preference in employment; (3) Mendonca is not entitled to relief under G. L. c. 31, § 39, because he was a "provisional" employee; and (4) EOLWD's decision that Mendonca was not qualified for any of the other Administrator III

positions was supported by substantial evidence. Mendonca sought Superior Court review pursuant to G. L. c. 31, § 44. On October 11, 2013, the Superior Court judge upheld the commission's decision.

Discussion. 1. Standards of review. The commission was required "to determine, on the basis of the evidence before it, whether [EOLWD] sustained its burden of proving, by a preponderance of the evidence, that there was reasonable justification for the action taken by [EOLWD]." Brackett v. Civil Serv. Commn., 447 Mass. 233, 241 (2006). "Reasonable justification in this context means 'done upon adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law." Ibid., quoting from Selectmen of Wakefield v. Judge of First Dist. Ct. of E. Middlesex, 262 Mass. 477, 482 (1928). The judge was required to uphold the commission's decision if supported by substantial evidence. Ibid.

"[W]e review the commission's decision to determine if it violates any of the standards set forth in G. L. c. 30A, § 14(7), and cases construing those standards." Plymouth v. Civil Serv. Commn., 426 Mass. 1, 5 (1997). While we are "bound to accept the findings of fact of the commission's hearing officer, if supported by substantial evidence," Leominster v. Stratton, 58 Mass. App. Ct. 726, 728 (2003), "we are required to

overturn commission decisions that are inconsistent with governing law." Plymouth, supra. We review conclusions of law de novo, Andrews v. Civil Serv. Commn., 446 Mass. 611, 615 (2006), and ask "whether, on the basis of the transcript of evidence before the [hearing officer] and the [hearing officer]'s findings and conclusions, the commission substantially erred in a way that materially affected the rights of the parties." Gloucester v. Civil Serv. Commn., 408 Mass. 292, 297 (1990). Mendonca bears the burden of proving the invalidity of the commission's decision. See Brackett, supra at 242.

2. Veterans' Tenure Act. The hearing officer concluded that Mendonca was not entitled to additional rights under the Veterans' Tenure Act, G. L. c. 30, § 9A, because Administrator III is a classified position. Under that statute, veterans holding positions not classified under the civil service laws may not be laid off except in accordance with G. L. c. 31, §§ 41-45. G. L. c. 30, § 9A, as amended by St. 1978, c. 393, § 8. General Laws c. 31, §§ 41-45, require that a layoff be for "just cause," and that the employee have notice, a hearing, and review of the decision. If layoff of a veteran holding an unclassified job "results from lack of work or lack of money," the Veterans' Tenure Act provides that such veteran "shall not be separated  . . . while similar offices or positions in the

same group or grade . . . exist unless all such offices or positions are held by such veterans."  G. L. c. 30, § 9A.

The Administrator III position is classified under the civil service laws, see G. L. c. 31, § 45(1), and the Veterans' Tenure Act applies, by its terms, to veterans holding positions that are not classified.  See Aquino v. Civil Serv. Commn., 34 Mass. App. Ct. 538, 541 (1993) (applying the "well-known maxim" that "expression of one thing is the exclusion of another").  Because Mendonca's position was "expressly exempted by the language of [G. L. c. 31, § 9A,]" there was no error in the hearing officer's conclusion.  Barkin v. Milk Control Commn., 8 Mass. App. Ct. 517, 520 (1979).

Indeed, as a "provisional" employee, Mendonca could not achieve tenure[4] and could be terminated at any time.  See G. L. c. 31, § 14; Sullivan v. Commissioner of Commerce & Dev., 351 Mass. 462, 465 (1966); Dallas v. Commissioner of Pub. Health, 1 Mass. App. Ct. 768, 771 (1974); Fall River v. AFSCME Council 93, Local 3177, AFL-CIO, 61 Mass. App. Ct. 404, 408 n.4 (2004).  EOLWD did not need to show just cause for its action, Rafferty v. Commissioner of Pub. Welfare, 20 Mass. App. Ct. 718, 723

---

[4] "A tenured employee in the civil service system is one who initially occupied a position by original appointment pursuant to G. L. c. 31, § 6, and has completed the probationary period, or one who has received a 'promotional appointment' on a permanent basis as provided in G. L. c. 31, § 8."  Andrews, 446 Mass. at 613.

(1985), and Mendonca was not entitled to a hearing because he was not "discharged as a result of allegations relative to his personal character or work performance." G. L. c. 31, § 41, inserted by St. 1978, c. 393, § 11.

3. Disabled Veterans' Act. Under the Disabled Veterans' Act, "[a]n appointing authority shall appoint a veteran in making a provisional appointment under section twelve," and "[a] disabled veteran shall be retained in employment in preference to all other persons, including veterans." G. L. c. 31, § 26, inserted by St. 1978, c. 393, § 11. General Laws c. 31, § 26, represents "a legislatively created mechanism under which veterans receive a preference over non-veterans in certain types of civil service employment." Aquino, 34 Mass. App. Ct. at 539. Because the statute requires that "disabled veterans be[] kept on the payroll in preference to others," Provencal v. Police Dept. of Worcester, 423 Mass. 626, 630 (1996), "all employees having the same title in a particular departmental unit who are not disabled veterans must be laid off first according to seniority, followed by such employees who are disabled veterans according to seniority." 1980 Op. Atty. Gen., Rep. A.G., Pub. Doc. No. 12 at 98 (July 21, 1980).

Here, EOLWD laid off Mendonca while retaining three Administrator IIIs who are not veterans, and one Administrator III who is not a disabled veteran. The hearing officer

concluded that EOLWD's actions did not violate G. L. c. 31, § 26, because "substantial evidence established that [Mendonca] could not show that there were any other Administrator III positions for which he was qualified within EOLWD into which he could have been transferred." Massachusetts courts have recognized a "basic requirement that the veteran being preferred be otherwise qualified to perform the duties of the office or position to which he was appointed." Hutcheson v. Director of Civil Serv., 361 Mass. 480, 497-498 (1972) (Quirico, J., dissenting), and cases cited. Mendonca offered his resume and Johnson's testimony to demonstrate his qualification for two of the remaining Administrator III positions -- Hurley Building superintendent and deputy director of contracts and procurement. The hearing officer relied on Olsen's testimony, the documentary evidence, and Johnson's testimony regarding transferable skills in concluding that Mendonca was not qualified for any other Administrator III positions. While the record supports the hearing officer's findings concerning the Hurley Building superintendent position, we cannot agree that it provides substantial evidence that Mendonca was unqualified for the deputy director position.

"'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6). While Olsen testified that Mendonca's job "was

very different" from those performed by the other Administrator IIIs, the title Administrator III is "applied to a position or to a group of positions having similar duties and the same general level of responsibility." G. L. c. 31, § 1, inserted by St. 1978, c. 393, § 11 (defining "Title"). To avoid this reality, Olsen testified that Mendonca's duties more closely resembled those of a program manager, which is a "line oriented" position. Olsen then stated that he did not consider Mendonca for a program manager position because they were "line oriented" as opposed to "staff oriented" and therefore not "similarly situated" to Mendonca's Administrator III position. Thus, according to Olsen's testimony, Mendonca was not qualified for the Administrator III positions because those are "staff oriented" and Mendonca was a "line manager," and Olsen did not need to consider Mendonca for a "line oriented" program manager position because Administrator III is "staff oriented" and G. L. c. 31, § 26, only requires Olsen to investigate "similarly situated offices."

In hiring Mendonca as a provisional employee, EOLWD was required to substantiate that Mendonca "meets the proposed requirements for appointment to the position [of Administrator III] and possesses the knowledge, skills and abilities necessary to perform such duties." G. L. c. 31, § 13, amended by St. 1985, c. 257, § 4. "A provisional appointment . . . shall be

terminated" whenever it is determined "that the person appointed does not, in fact, possess the approved qualifications or satisfy the approved requirements for the position," G. L. c. 31, § 14, inserted by St. 1978, c. 393, § 11; however, Mendonca's provisional employment was not terminated when he was reclassified as a "line oriented" Program Coordinator II. Olsen's stated justification for not retaining Mendonca either in his titled Administrator III position or in the Program Coordinator II position was that an individual rarely possesses the skills to work in both "staff oriented" and "line oriented" positions. Olsen also testified that Mendonca's experience was in human resources (a "staff oriented" field), and that his duties as JS/JR coordinator more closely resembled those of a "line manager." We do not think that "under the substantial evidence test," Olsen's inconsistent testimony and circular logic could "reasonably form the basis of impartial, reasoned judgment." Cobble v. Commissioner of the Dept. of Social Servs., 430 Mass. 385, 393 n.8 (1999).

The deputy director position requires an associate's degree in business administration. Mendonca has a bachelor's degree in business management and a master's degree in business administration. While the hearing officer found that Mendonca "does not possess knowledge, skills or abilities relating to the" Commonwealth's accounting system, financial systems, and

general accounting policies and procedures specific to the comptroller's office, Mendonca's MQ shows that he was responsible for "reconciling statewide claimed earnings, invoicing, determining and accounting for specific Career Center earnings," and working closely with other EOLWD departments "for successful program outcomes and adherence to approved budgets." Moreover, Johnson testified that Mendonca's experience "working with the state reimbursement," "do[ing] some of the budgeting work and work[ing] within the system" were transferable skills.

The hearing officer found that Mendonca "has no experience in contract procurement activities and the laws regarding trade and procurement regulations" despite crediting Johnson's testimony that Mendonca's transferable skills include "being able to analyze contracts, being able to work with vendors, . . . being able to work with other state agencies, [and] being able to read and analyze the requirements for submitting . . . requests." Mendonca's position as JS/JR coordinator involved reading, analyzing, and following through on contracts while following State procedures. Mendonca's experience in labor relations undoubtedly involved reading, analyzing, and applying Federal laws and regulations, and his resume demonstrates that he has experience with cash management and audits in relation to compensation and benefits. As an Administrator III, Mendonca "reconcile[d] performance earnings for the JS/JR program,"

"[r]ecommend[ed] amounts and conditions for reimbursement," and "[m]onitor[ed] the preparation of documents to validate DCS compensation, resolve discrepancies and prepare invoice to DTA to secure program funding."  Thus, contrary to the hearing officer's finding, Mendonca does "possess knowledge, skills or abilities" relating to financial systems and general accounting policies and procedures specific to the Commonwealth.

While "the substantial evidence test accords an appropriate degree of judicial deference to administrative decisions," reversal by a reviewing court is required "if the cumulative weight of the evidence tends substantially toward opposite inferences."  Cobble, supra at 391.  The evidence in this case demonstrates that Mendonca is a disabled veteran, that he is qualified for the Administrator III position, and that EOLWD laid him off while retaining four Administrator IIIs who are not disabled veterans.  General Laws c. 31, § 26, mandates a preference for disabled veterans in continuing the employer-employee relationship, Provencal, 423 Mass. at 628, and applies with respect to other employees in the same title.  Andrews, 446 Mass. at 616-617.  "Preference to veterans must be a reality[;] [i]t cannot be made illusory or a mere gesture" by performing only the most cursory consideration of a veteran's qualifications for similarly situated positions.  Opinion of the Justices, 324 Mass. 736, 744 (1949).  Olsen's stated reasons for

not retaining Mendonca cannot be considered "sufficiently supported by credible evidence" to overcome the preference which the statute provides, Selectmen of Wakefield, 262 Mass. at 482; nor does his testimony provide substantial evidence in support of the hearing officer's findings.  The judge's decision upholding the hearing officer's findings and conclusions is not "legally tenable" in light of the statutory preference for disabled veterans, School Comm. of Brockton v. Civil Serv. Commn., 43 Mass. App. Ct. 486, 490 (1997), quoting from Gloucester v. Civil Serv. Commn., 408 Mass. 292, 297 (1990).[5]

Conclusion.  The judgment is reversed, and the case is remanded to the Superior Court for the entry of a new judgment ordering the commission to vacate its decision and enter a new decision ordering the reinstatement of Mendonca to an Administrative III position retroactive to April 10, 2008.

So ordered.

---

[5] The defendants argue that Mendonca has waived his right to be reinstated as an Administrator III because the JS/JR program has been eliminated and he only sought reinstatement to his "old job" in Superior Court.  However, Mendonca also sought from the Superior Court "a Decision . . . finding that the lay off from his position was not justified."  Because Mendonca is entitled to the veterans' preference, which applies to those holding the same title, Andrews, supra, he has not waived his right to be reinstated as an Administrator III.