JOHN FONTANA *vs.* COMMISSIONER OF THE METROPOLITAN DISTRICT COMMISSION.

No. 91-P-618.

Suffolk. October 21, 1992. - February 1, 1993.

Present: DREBEN, FINE, & LAURENCE, JJ.

*Public Employment*, Provisional employee, Termination. *Contract*, Employment. *Due Process of Law*, Termination of employment. *Administrative Law*, Hearing.

A probationary police officer of the Metropolitan District Commission had neither a constitutionally protected property interest in his position [64-65], nor any contractually based right to continued employment [65].

In the case of a probationary police officer who had been discharged from his employment by the Metropolitan District Commission (MDC) on grounds that reflected adversely on his fitness to serve as a police officer and that were likely to be disseminated to the public or communicated in the future to prospective employers, a pretermination interview by officers of an internal bureau of the MDC, together with other proceedings afforded to the employee, satisfied any due process requirements for a pretermination hearing that may have existed by virtue of the employee's protected liberty interest in his reputation [68-70]; however, the employee was also entitled, under G. L. c. 31, § 41, third par., to a posttermination "name-clearing" hearing before his appointing authority, at which he would have the opportunity to refute the charges against him [70-72].

CIVIL ACTION commenced in the Superior Court Department on June 15, 1989.

Motions for summary judgment were heard by *Elbert Tuttle*, J., and *J. Owen Todd*, J., respectively.

*Gabriel O. Dumont, Jr.*, for the plaintiff.

*Amy Spector*, Assistant Attorney General, for the defendant.

DREBEN, J. Based on a determination that the plaintiff, a probationary police officer, had been involved in a hit and

run accident and had untruthfully denied having any knowledge of this incident, the defendant, the commissioner of the Metropolitan District Commission (MDC), discharged the plaintiff. The latter, in this action, asserted that the charges were false and claimed that he had been deprived of constitutionally protected property and liberty interests, and that the defendant had broken its contract with him. A judge of the Superior Court entered partial summary judgment for the defendant on the plaintiff's property and contract claims, and, subsequently, a second Superior Court judge dismissed the liberty claims. This is an appeal from the ensuing final judgment. We affirm the judgment in favor of the defendant on the plaintiff's property and contract claims but conclude that the plaintiff by virtue of G. L. c. 31, § 41, is entitled to an additional name-clearing hearing before the appointing authority.

The facts are not in dispute and will be set forth in our discussion of the plaintiff's liberty interest.

1. *Property claim.* Recognizing that a provisional employee does not have a statutory basis for claiming a property interest in continued employment, see *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 759-760 (1976), and G. L. c. 31, § 65, the plaintiff urges that G. L. c. 31, § 41 (1988 ed.),[1] and certain MDC rules that dictate the manner in which discipline is to be administered to MDC officers create a constitutionally protected property interest for probationary em-

---

[1]The third paragraph of G. L. c. 31, § 41, provides:

"If a person employed under a provisional appointment . . . is discharged as a result of allegations relative to his personal character or work performance and if the reason for such discharge is to become part of his employment record, he shall be entitled, upon his request in writing, to an informal hearing before his appointing authority or a designee thereof within ten days of such request. If the appointing authority, after hearing, finds that the discharge was justified, the discharge shall be affirmed, and the appointing authority may direct that the reasons for such discharge become part of such person's employment record. Otherwise, the appointing authority shall reverse such discharge, and the allegations against such person shall be stricken from such record. The decision of the appointing authority shall be final, and notification thereof shall be made in writing to such person and other parties concerned within ten days following such hearing."

ployees. Even accepting the dubious premise that the rules articulate a hearing procedure to be followed prior to termination, rules or a statute (G. L. c. 31, § 41) which " 'merely condition an employee's removal on compliance with certain specified procedures' do[] not establish a constitutionally protected property interest." *Smith* v. *Commissioner of Mental Retardation*, 409 Mass. 545, 549 (1991), quoting from *Bishop* v. *Wood*, 426 U.S. 341, 345 & n.8 (1976). Disciplinary or discharge procedures do not convert a provisional employee's interest in his or her employment into constitutionally protected property. *Rafferty* v. *Commissioner of Pub. Welfare*, 20 Mass. App. Ct. 718, 723 (1985) (involving an at-will employee).

2. *Contract claim.* The plaintiff also relies on the same MDC rules to establish his contract right to continued employment. The explicit provision of G. L. c. 31, § 65 (1988 ed.), that "a person [in the plaintiff's position] shall actually perform the duties of such position on a full-time basis for a probationary period of twelve months before he shall be considered a full-time tenured employee in such position," cannot succumb to MDC rules or contractual promises which are inconsistent with the legislative mandate.

Moreover, rule 20 of the MDC rules and the preamble to those rules state that appointments are to be made in accordance with the applicable provisions of law, and rule 20 specifically refers to the civil service laws of which G. L. c. 31, § 65, is a part. In these circumstances, the plaintiff's reliance on the rules is misplaced; "the conclusion is inexorable that no implied contract" for continued employment based on the rules existed. See *Jackson* v. *Action for Boston Community Dev., Inc.*, 403 Mass. 8, 14 (1988). Since we conclude (see part 3, *infra*) that the plaintiff is to be given an additional name-clearing hearing with greater safeguards than provided by the rules, we need not consider the plaintiff's claim to a contractual right to a hearing by reason of the rules.[2]

---

[2] We do not intend to suggest that the rules confer any such right.

3. *Liberty interest.* As indicated earlier, the plaintiff's dismissal resulted from his alleged involvement in a hit-and-run accident which occurred in January, 1989. An anonymous caller informed the police that a vehicle having a certain registration plate had struck a pedestrian. The plate number was traced to an automobile owned by the plaintiff. In April, 1989, after chemical tests showed that paint chips from the plaintiff's vehicle were consistent with paint fragments taken from the victim's clothing, the MDC applied for a criminal complaint against the plaintiff. Following a show-cause hearing in the District Court, a clerk-magistrate declined to issue a criminal complaint.

On May 11, 1989, the plaintiff was interviewed by officers of an internal MDC bureau in charge of investigating alleged misconduct by MDC police officers. The interview was tape recorded and the plaintiff was represented by counsel; a union attorney was also present. Questioned about his involvement in the accident, and about the chemical paint analysis, the plaintiff denied being aware that his vehicle had been involved in an accident and said that while he had been told of the chemical evidence, he had not seen it.

As part of the investigation, the plaintiff was asked to submit a written report. His written submission reaffirmed that he did not believe that he had been involved in the accident, but admitted that, while on the expressway, he thought he saw "something or someone out of the corner of [his] eye." He slammed on the brakes, swerved to the left, and "thought that [he] may have bumped the guardrail."

On May 26, 1989, the plaintiff delivered a letter addressed to the commissioner stating that he understood that the commissioner was considering discharging him and requesting a meeting to answer the charges. He claimed that he had not had an opportunity to "hear or see the alleged evidence against him" or to "question it."

On the same day, May 26, 1989, the commissioner sent the plaintiff a letter notifying him that he was being terminated from his position because he had untruthfully denied his involvement in an accident, had left an injured person in

the roadway, and, among other derelictions of duty, had violated G. L. c. 90, § 24 (2)(*a*), by not stopping and making known his name, residence, and registration number. Because of this behavior, the plaintiff's "character and conduct" were "unsatisfactory to the department and in derogation of [his] sworn duties as a police officer." No action was taken on the plaintiff's request of May 26, 1989, for a meeting and, without further discussion with the plaintiff, the commissioner's letter was read at four police roll calls, was posted within the MDC police station, and was placed in the plaintiff's personnel file.

The plaintiff thereafter sought unemployment benefits. Although the MDC claimed that the plaintiff had been discharged for deliberate misconduct, a hearing officer of the Department of Employment and Training (DET) dismissed the employer's charges because it could not be established that the plaintiff was driving the vehicle even if his car had been involved in the accident. The board of review of DET denied the MDC's application for review.[3]

In considering the defendant's motion for summary judgment on the plaintiff's liberty interest claim, the second motion judge recognized that the plaintiff's liberty interest was implicated and that he was entitled to a name-clearing hearing. A liberty interest arises where, as here, a public employee is discharged because of stigmatizing charges alleged by the employee to be false and which are disseminated to the public or are likely to be communicated to prospective employers. See *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 573 (1972); *Bishop* v. *Wood*, 426 U.S. at 348; *Stetson* v. *Selectmen of Carlisle*, 369 Mass 755, 762 (1976); *Smith* v. *Commissioner of Mental Retardation*, 409 Mass. at 550-551.

The judge, however, concluded that the hearings previously accorded to the plaintiff were sufficient.

---

[3]The defendant states in his brief that the MDC has appealed the DET decision to the Boston Municipal Court.

"Mr. Fontana has had three opportunities to hear and evaluate the MDC's evidence and refute the charges against him in order to clear his name. First, he had a show-cause hearing before a district court clerk-magistrate at which he was able to challenge the evidence assembled by the MDC. The district court declined to issue a criminal complaint against Fontana. On May 11, 1989, prior to Fontana's dismissal, he was interviewed by MDC officers relative to the alleged hit and run accident. Fontana, accompanied by counsel, was presented with the evidence against him and given the opportunity to challenge it. He offered no information to rebut the evidence. Finally, subsequent to Fontana's discharge, the Department of Employment and Training ('DET'), then the Division of Employment Security, conducted a hearing to determine whether Fontana should be denied unemployment benefits for having engaged in deliberate acts in wilful disregard of the MDC's interests. Fontana was there again given an opportunity to clear his name, and was successful in obtaining a decision in his favor. Taken together, if not individually, these three occasions satisfy the due process requirements of notice and an opportunity to be heard. Additionally, Fontana can point to his successes in the district court and DET proceedings in order to clear his name and reputation from the stigma imposed by the MDC's charges."

The difficult question is whether the second motion judge was correct that the three hearings satisfied the constitutional and statutory requirements.[4] Because we conclude that the hearings did not satisfy the statutory requirements, more particularly G. L. c. 31, § 41, we do not reach the question whether the constitutional standards were met by the three hearings.

We must, however, first dispose of the plaintiff's constitutional claim that he was entitled to, but did not receive, a

---

[4]At oral argument, before the panel of this court, the defendant conceded that the plaintiff had a liberty interest in clearing his name.

pretermination hearing before the appointing authority. While due process requires a pretermination hearing when a person having a *property* interest in his employment is terminated, *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 542 (1985), the liberty interest here involved is the plaintiff's good name, and the question remains unanswered whether he is entitled to a pre-deprivation hearing,[5] that is, "a name-clearing hearing *before* any publication of defamatory statements in his personnel file or only afterward." *Smith* v. *Commissioner of Mental Retardation*, 409 Mass. at 551 (emphasis supplied). See *Arnett* v. *Kennedy*, 416 U.S. 134, 157 (1974), and *Stetson* v. *Selectmen of Carlisle*, 369 Mass at 764 n. 14, both indicating that a postdismissal name-clearing hearing sufficiently complies with due process requirements.

In any event, even if a pretermination, or more accurately a pre-deprivation, hearing is required, the May 11, 1989, interview was sufficient to satisfy due process requirements, at least when coupled with the show-cause hearing before the clerk-magistrate, and the right to a more extensive hearing thereafter. In discussing the requirements of a pretermination hearing, the court in *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. at 546-547, held that a tenured public employee was "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." A "pretermination hearing need not definitively resolve the propriety of the discharge" but rather should be "an initial check against mistaken decisions, — essentially, a determination of whether there are reasonable grounds to believe

---

[5]The term "pre-deprivation hearing" was used in *Smith* v. *Commissioner of Mental Retardation*, 409 Mass. at 549, and is preferable to the term "pretermination hearing" where the liberty interest entails the right to a name-clearing hearing. As indicated in the text, the open question is whether the hearing must occur prior to publication. Dissemination of defamatory material may occur at the same time as, or immediately after, termination. In such event, even if a pre-deprivation hearing were required, the pre-deprivation hearing would not have to precede termination (discharge).

that the charges against the employee are true and support the proposed action." *Id.* at 545-546.

Here, the second motion judge's findings (supported by the transcript of the interview) indicate that the May 11, 1989, meeting and the show-cause hearing comply with the *Loudermill* pretermination hearing requirements. We thus conclude that, even if the plaintiff was entitled to a pre-deprivation hearing, the hearing he received was adequate.

We agree, however, with his claim that he was entitled, under G. L. c. 31, § 41, upon his request,[6] to a more extensive name-clearing hearing before the appointing authority than was afforded by the May 11, 1989, interview. A crucial purpose of the name-clearing hearing is to prevent unfair foreclosure of future employment. See *Regents of State Colleges* v. *Roth*, 408 U.S. at 573-574; *Codd* v. *Velger*, 429 U.S. 624, 625 (1977); *Stetson* v. *Selectmen of Carlisle*, 369 Mass. at 762 ("dismissal because of immoral, illegal conduct . . . entitles the employee to . . . a hearing . . . , if those charges have been or are likely to be disseminated either to members of the public *or to prospective employers*" [emphasis supplied]); *Smith* v. *Commissioner of Mental Retardation*, 409 Mass. at 551 (contrasting action to challenge demotion with action brought "to obtain a postdemotion name-clearing hearing to protect the plaintiff's ability to obtain new employment"); *Doe* v. *United States Dept. of Justice*, 753 F. 2d 1092, 1104-1105 (D.C. Cir. 1985). While the foregoing cases discuss the name-clearing hearing in a constitutional context, the Legislature has also specifically expressed this concern. Where unfavorable material, even if insufficiently stigmatizing to raise due process concerns, is to be placed in an employee's employment record, a hearing is required by G. L. c. 31, § 41, third par., set forth in note 1, *supra*.[7]

---

[6]We treat his May 26, 1989, letter as such a request.

[7]While G. L. c. 31, § 41, third par., only speaks of an informal hearing, due process concerns are implicated where the material is seriously damaging. See *Stetson* v. *Selectmen of Carlisle*, 369 Mass. at 761-762. In such cases a full opportunity to refute the charges should be given, at least where there is no other adequate name-clearing hearing. The "precise form of name-clearing hearing to which an employee might be entitled"

Although the record does not indicate what kind of DET hearing Fontana had in connection with obtaining unemployment benefits, since the benefits were contested, we assume that the hearing was a plenary one comporting with the safeguards provided in G. L. c. 151A, § 39. Nevertheless, even if that hearing, together with the preceding hearings, satisfied procedural due process requirements (a question which we do not decide), it did not comply with G. L. c. 31, § 41.

The hearing mandated by that statute must be before the appointing authority. Since the DET proceedings left the stigmatizing termination letter in the plaintiff's MDC personnel files, the salutary purpose of the statutory name-clearing hearing was not met, as it "is scarcely plausible that the judgment of dishonesty made by [the commissioner] will not . . . travel . . . to any prospective employer who inquires." See *Smith* v. *Commissioner of Mental Retardation*, 28 Mass. App. Ct. 628, 637 (1990), *S.C.*, 409 Mass 545 (1991) (rejecting holding of Appeals Court that not only discharge, but also demotion, because of stigmatizing charges, implicates a liberty interest).

In view of the legislative concern about the damaging effect of stigmatizing employment records and the statute's mandate that the hearing be before the appointing authority, we conclude that to be meaningful, "the name-clearing proceeding must be run by the same actor who diminished the plaintiff['s] reputation[]." See *Limerick* v. *Greenwald*, 666 F.2d 733, 735 (lst Cir.1981). See also *Regents of State Colleges* v. *Roth*, 408 U.S. at 573; *Rosenstein* v. *Dallas*, 876 F. 2d 392, 396 (5th Cir. 1989); *Stetson* v. *Selectmen of Carlisle*, 369 Mass at 755. Contrast *Ossinger* v. *Newton*, 26 Mass. App. Ct. 831, 832 n.2, 834-835 (1989), where the relevant statutes contained no hearing requirement and expressly made inapplicable the civil service laws.

Where there has been an insufficient name-clearing hearing, the remedy to be afforded is "an opportunity to refute the charge[s]." See *Codd* v. *Velger*, 429 U.S. at 627. *Rodri-*

under the Constitution has been left open. *Smith* v. *Commissioner of Mental Retardation*, 409 Mass. at 551.

*guez de Quinonez* v. *Perez*, 596 F. 2d 486, 491 (lst Cir. 1979) (cases discussing constitutional procedural violations). Damages would be unavailable on the present state of the record even if there were a constitutional violation. "In the absence of proof of injury resulting from the procedural due process violation, damages other than nominal damages are generally not appropriate. *Carey* v. *Piphus*, 435 U.S. 247, 260 (1978)." See *Rodriguez de Quinonez* v. *Perez*, *supra* at 491.

Accordingly, the judgment is vacated and the matter is remanded to the Superior Court for the entry of a new judgment instructing the MDC to provide the plaintiff with a name-clearing hearing before the appointing authority. Although our remand is based on the statute, the commissioner, in order to forestall any constitutional challenges to the sufficiency of the hearing, would be well advised to follow the procedure outlined in *Stetson* v. *Selectmen of Carlisle*, 369 Mass at 764 n. 14. See note 7, *supra.*

*So ordered.*