404                61 Mass. App. Ct. 404 (2004)

City of Fall River *v.* AFSCME Council 93, Local 3177, AFL-CIO.

# CITY OF FALL RIVER *vs.* AFSCME COUNCIL 93, LOCAL 3177, AFL-CIO.

No. 03-P-190.

Bristol. January 12, 2004. - June 29, 2004.

Present: DUFFLY, KANTROWITZ, & KAFKER, JJ.

*Civil Service,* Collective bargaining. *Labor,* Collective bargaining, Civil service, Discharge. *Public Employment,* Collective bargaining, Provisional employee, Termination. *Arbitration,* Collective bargaining, Arbitrable question.

This court concluded that there was no conflict between G. L. c. 31, § 41, and a provision in a collective bargaining agreement that allowed the appointing authority to agree to an arbitrator's determination whether a provisional employee's discharge was justified, and that therefore the arbitrator did not exceed his authority in determining that such a dispute was arbitrable under the agreement. [406-413]

CIVIL ACTION commenced in the Superior Court Department on July 7, 1999.

A question of law was reported by *E. Susan Garsh,* J., on a statement of agreed facts.

*Albert R. Mason* for the plaintiff.

*Angela M. Davidovich* for the defendant.

KAFKER, J. In this reported case, we consider whether there is a conflict between provisions of the civil service law, G. L. c. 31, and a collective bargaining agreement. The provisions relate to the discharge of employees with provisional appointments under the civil service law. The employee here was discharged from her position as a police dispatcher. No eligibility list pursuant to the civil service law has ever been prepared for this position.

The issues, as framed by the Superior Court judge, are (1) "whether an arbitrator's award finding that a . . . 'provisional

employee' may . . . [arbitrate her discharge pursuant to the collective bargaining agreement] is final and binding or whether said arbitrability determination is a matter for the courts and [(2)] whether, as a matter of law, allowing a provisional employee to arbitrate [her] discharge is invalid for being in conflict with G. L. c. 31, § 41," of the civil service law, which provides for a name-clearing hearing. We conclude that the question whether G. L. c. 31, § 41, conflicts with, and precludes the enforcement of, the collective bargaining agreement is ultimately a matter for the court and not the arbitrator to decide. This includes the issue of the arbitrability of the agreement. We also conclude that G. L. c. 31, § 41, does not conflict with provisions in the collective bargaining agreement governing the discharge of the provisional employee in this case, so that the arbitrator did not exceed his authority in determining that the dispute was arbitrable under the agreement.

1. *Facts.* As required by Mass.R.Civ.P. 64(a), as amended, 423 Mass. 1403 (1996), the parties have agreed to all material facts.[1] Catherine Terceiro was employed by the city of Fall River as a police department telecommunicator, a position popularly known as a "police dispatcher." The police dispatcher position was covered by a collective bargaining agreement (CBA) between the union and the city. Terceiro was appointed to this civil service position pursuant to a provisional appointment. At all relevant times, from the date she was hired, through her period of service, to the date of appeal, no list of eligible persons, that is, persons who had taken a civil service exam to become eligible for the position, existed. The Commonwealth's personnel administrator had not developed a standardized test or exam for the dispatcher position. In their stipulated facts, the parties estimated that approximately 10,000 of the 40,000 civil service positions within the Commonwealth are occupied by provisional employees. Terceiro had served as a dispatcher for more than nine months when she was discharged on May 14, 1998.

After her discharge, the union sought to arbitrate the dispute.

---

[1] "The court, upon request of the parties, in any case where the parties agree in writing as to all the material facts, may report the case to the appeals court for determination without making any decision thereon." Mass.R.Civ.P. 64(a).

The city challenged the jurisdiction of the arbitrator. The arbitrator concluded that the dispute was arbitrable because the CBA provided both a "justifiable cause" standard for the discharge of provisional employees, as well as a grievance procedure ending in arbitration to enforce this procedural right, and there was no conflict with G. L. c. 31, § 41.[2] The case was thereafter reported by a Superior Court judge pursuant to rule 64.

2. *Discussion.* The civil service law is not one of the statutes identified in G. L. c. 150E, § 7(*d*), which may be "superseded by a collective bargaining agreement." *Fall River* v. *Teamsters Union, Local 526,* 27 Mass. App. Ct. 649, 651 (1989). See *Dedham* v. *Dedham Police Assn.,* 46 Mass. App. Ct. 418, 420 (1999). The question is therefore whether the civil service law and the relevant CBA provisions conflict. When possible, we attempt to read the civil service law and the collective bargaining law, as well as the agreements that flow from the collective bargaining law, as a "harmonious whole." *Dedham* v. *Labor Relations Commn.,* 365 Mass. 392, 402 (1974). Nevertheless, if the civil service law and the collective bargaining provisions conflict, then as matter of law, an arbitrator would act in excess of his powers in seeking to enforce those collective bargaining rights. See *School Dist. of Beverly* v. *Geller,* 435 Mass. 223, 228-230 (2001). Although the courts may be informed by the arbitrator's interpretation of the meaning and reach of a CBA, the determination whether the provisions of a CBA conflict with the civil service law is ultimately for the courts. See *Local No. 1710, Intl. Assn. of Firefighters, AFL-CIO* v. *Chicopee,* 430 Mass. 417, 421 (1999) ("the willingness of parties to enter into agreements to arbitrate would be drastically reduced . . . if a labor arbitrator had the power to determine his own jurisdiction" [citation omitted]); *School Dist. of Beverly* v. *Geller,* 435 Mass. at 230 (responsibility for interpreting meaning of statute and "scope of the arbitrator's authority thereunder remains with the court. It cannot be ceded to the arbitrator by agreement of the parties"); *Everett* v. *Teamsters, Local 380,* 18 Mass. App. Ct. 137, 139 (1984) ("whether the arbitrator acted in excess of his authority . . . is always open for judicial review"); *Fall*

---

[2]Counsel for the parties represented at oral argument before this court that the employee never sought to use G. L. c. 31, § 41, to challenge her discharge.

*River* v. *Teamsters Union, Local 526*, 27 Mass. App. Ct. at 650 (court made determination that claim was arbitrable, and not precluded by civil service law, after arbitrator had issued award).

Before focusing our inquiry on G. L. c. 31, § 41, and the discharge and arbitration provisions of the CBA, we need to put provisional employment under the civil service law and this CBA in context. The civil service law provides for the provisional appointment to a civil service position if "no suitable eligible list exists" from which to make a permanent appointment. G. L. c. 31, § 12. Here, no such list existed for the police dispatcher position. For municipal employees, a provisional appointment cannot be made without the approval of the administrator.[3] *Ibid.*

By statute, a provisional employment position shall not be "authorized, approved, or continued for more than thirty days" once a suitable list is established. G. L. c. 31, § 14. See *McLaughlin* v. *Commissioner of Pub. Works*, 304 Mass. 27, 29 (1939). Furthermore, "[a] provisional appointment may be terminated by the administrator at any time . . . whenever the administrator . . . shall determine that the person appointed does not, in fact, possess the approved qualifications or satisfy the approved requirements for the position." G. L. c. 31, § 14. Finally, as provided in G. L. c. 31, § 41, "[i]f a person employed under a provisional appointment for not less than nine months is discharged as a result of allegations relative to his personal character or work performance and if the reason for such discharge is to become part of his employment record, he shall be entitled, upon his request in writing, to an informal hearing before his appointing authority. . . . If the appointing authority, after hearing, finds that the discharge was justified, the discharge shall be affirmed. . . . Otherwise, the appointing authority shall reverse such discharge, and the allegations against such person shall be stricken from such record. The decision of the appointing authority shall be final."

The CBA at issue here was drafted with the express intention of avoiding conflicts with the civil service law. Foremost, it

[3]The administrator is "the personnel administrator of the human resources division within the executive office for administration and finance." G. L. c. 31, § 1, as amended by St. 1998, c. 161, § 234.

excludes "matters regarding wages and suspensions, demotions and discharges under Chapter 31." Furthermore, it provides that the "employer and the Union shall recognize and adhere to all Civil Service and State Labor Laws, Rules and Regulations, relative to seniority, promotions, transfers, discharges. . . . Any employee not covered by any statute relative to the above matter shall have recourse to the grievance procedure contained herein or Civil Service route." ·

The CBA also explicitly covers provisional employees, which is not uncommon. See *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 563 (1983) ("[t]he fact that the janitors were provisional employees does not exclude them from the protection of G. L. c. 150E"). See also *Commissioners of Middlesex County* v. *American Fedn. of State, County & Mun. Employees, AFL-CIO, Local 414*, 372 Mass. 466 (1977) (in case predating passage of c. 31, § 41, court allows nontenured provisional employees to arbitrate just cause discharge provisions). According to Article XXIV of the CBA, "[n]o temporary, provisional or intermittent employee shall be disciplined or discharged, except for justifiable cause, after having successfully served a probation period of six (6) months." The CBA also provides that "[a]ny grievance or dispute which may arise between the parties, including the application, meaning or interpretation of this agreement, shall be settled" according to a five-step process ending in arbitration.

The appointing authority, the city, through collective bargaining, agreed to have a neutral third party determine whether a provisional employee's discharge was for "justifiable cause," rather than retaining the right provided in the civil service law, G. L. c. 31, § 41, to make the final decision whether the discharge was "justified."[4] Also, unlike G. L. c. 31, § 41, the review of a decision to discharge a provisional employee is not

---

[4]The difference between the statutory and the contractual standards for the discharge of a provisional employee (discharge must be "justified" pursuant to § 41; for "justifiable cause" under the CBA), is by no means clear. Given the uncertain status of provisional employees, who may be terminated at any time if eligible lists are prepared and a permanent employee is selected therefrom, neither the "justified" or "justifiable" standard establishes the traditional "just cause" or "for cause" dismissal requirement that creates a constitutional property interest. See *Smith* v. *Commissioner of Mental Retarda-*

contingent on the need for "name-clearing" for future employment; the loss of the employment itself is sufficient. *Fontana* v. *Commissioner of the Metropolitan Dist. Commn.*, 34 Mass. App. Ct. 63, 70 (1993) (explaining name-clearing aspects of G. L. c. 31, § 41). Finally, under the CBA, a provisional employee's rights take effect after six months of employment, rather than nine months as provided by statute. The city agreed to these additional protections for its provisional employees. It had no obligation to do so.

The CBA provisions negotiated by the parties here do not intrude on the core concerns of the civil service law. For example, if an eligibility list is established for a position held by a provisional employee, the right to the position is determined exclusively by the list, not by the provisional employee's collective bargaining rights. See G. L. c. 31, § 14. The creation of these lists is under the exclusive control of the administrator, not the appointing authority or the union. See G. L. c. 31, § 12. The administrator must also authorize the hiring of the provisional employee in the first place. See *ibid.* Furthermore, the administrator may terminate provisional employees if they do not "possess the approved qualifications or satisfy the approved requirements for the position." G. L. c. 31, § 14.

Focusing on "the fundamental purposes of the civil service system — to guard against political considerations, favoritism, and bias in governmental employment decisions . . . and to protect efficient public employees from political control," *Cambridge* v. *Civil Serv. Commn.*, 43 Mass. App. Ct. 300, 304 (1997), we see no conflict with the contractual rights at issue. Allowing the appointing authority to agree to a neutral third

---

*tion,* 409 Mass. 545, 549 (1991) (G. L. c. 31, § 41, rights of provisional employee with nine months' seniority "merely conditions an employee's removal on compliance with certain specified procedures [and] does not establish a constitutionally protected property interest in position" [citation and quotation marks omitted]); *Rafferty* v. *Commissioner of Pub. Welfare,* 20 Mass. App. Ct. 718, 723 (1985) ("[t]here is no statutory requirement that a provisional employee cannot be removed without proof that the removal is for cause" under G. L. c. 31, § 41); *Bennett* v. *Boston,* 869 F.2d 19, 22 (1st Cir. 1989) (Breyer, J.) ("for cause" contractual rights for provisional employees do not create constitutional property rights due to special status of provisional employees under civil service laws).

party's determination whether a provisional employee's discharge was justified, rather than requiring the appointing authority to retain that unfettered right for itself, promotes these values.[5] It also supports the "strong" public policies (1) "favoring collective bargaining between the public employers and employees over the conditions and terms of employment," *Chief Justice for Admn. & Mgmt. of the Trial Ct.* v. *Office and Professional Employees Intl. Union, Local 6, AFL-CIO*, 441 Mass. 620, 630 (2004), quoting from *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 761-762 (2003), and (2) encouraging arbitration, *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. at 758.[6]

The CBA and G. L. c. 31, § 41, may also be read harmoniously because they are designed to address different issues. The CBA is focused on a provisional employee's right not to be discharged without justifiable cause until eligibility lists are prepared. Section 41, on the other hand, is focused on name-clearing and the future employment prospects of employees whose reputations have been stained by their discharge. See *Fontana* v. *Commissioner of the Metropolitan Dist. Commn.*, 34 Mass. App. Ct. at 70 ("A crucial purpose of the name-clearing hearing is to prevent unfair foreclosure of future employment"). The focus of § 41 is reflected in the fact that its protections are triggered only when "the reason for [the provisional employee's] discharge is to become part of his employment record," and the reason is related to his "personal character or work performance."

Before concluding that the civil service statutory scheme

---

[5]Providing such a process, even without the opportunity for name-clearing, and after six months of provisional employment rather than nine also promotes these civil service values.

[6]The importance of collective bargaining and arbitration distinguish the instant case from *Rafferty* v. *Commissioner of Pub. Welfare*, 20 Mass. App. Ct. 718, 725 (1985), where we declined to "decide whether a State agency [on its own initiative outside of collective bargaining could] expand upon the rights of a provisional civil service employee." In contrast, collective bargaining and arbitration were present in *Commissioners of Middlesex County* v. *American Fedn. of State, County & Mun. Employees, AFL-CIO, Local 414*, 372 Mass. at 467, where the court allowed "non-tenured" civil service employees to arbitrate a just cause discharge provision. *Commissioners of Middlesex County*, however, predates the passage of G. L. c. 31, § 41.

precludes operation of a bargained-for contractual provision, we have required that the conflicts between the civil service law and the CBA be "material." *Leominster* v. *International Bhd. of Police Officers, Local 338,* 33 Mass. App. Ct. 121, 125 (1992) (*Leominster*). Such conflicts have been found where the "award by the arbitrator forces the city to violate the procedures outlined in G. L. c. 31 in regard to the appointment of qualified individuals to civil service vacancies," thereby producing an appointment compelled by collective bargaining that is prohibited by the civil service law. *Everett* v. *Teamsters, Local 380,* 18 Mass. App. Ct. at 140. See *Massachusetts Org. of State Engrs. & Scientists* v. *Commissioner of Admn.,* 29 Mass. App. Ct. 916, 918 (1990) (four-year experience requirement set by personnel administrator conflicts with six-year qualification set by appointing authority). Similarly, such a conflict has been found where a collective bargaining right "directly and substantially conflicts" with a policy choice reflected in the civil service law. *Leominster, supra* at 127.

Two cases that require individual consideration are *Fall River* v. *Teamsters Union, Local 526,* 27 Mass. App. Ct. at 649, and *Leominster, supra.* In *Fall River, supra* at 650, the issue presented was whether a provisional appointment to a position covered by a CBA had to be made on the basis of a seniority clause in the agreement. An arbitrator determined it did, but a Superior Court judge vacated the award, concluding that the municipality's power of appointment was "non-delegable" under the civil service law. *Id.* at 651. We reversed on the ground that the "provisional appointment provisions of the civil service law do not preclude the application of a seniority clause in a collective bargaining agreement for purposes of choosing among qualified candidates for a position." *Id.* at 653. We also concluded that "[r]ecourse to seniority in filling a civil service job does not distort any policy of the civil service law or any other statute called to attention." *Id.* at 654.

In contrast, we did identify conflicting provisions and a distortion of policy in *Leominster, supra.* There, an arbitrator determined that the discharge of a police officer serving her twelve-month probationary period, prior to attaining tenure and permanent status, required a showing of just cause as provided

in the CBA. *Id.* at 122-123. This court focused on the substantive difference between the contract standard of "just cause" and the civil service standard of "not satisfactory to the appointing authority." *Id.* at 125. We concluded that the contract standard conflicted with the more subjective and prognostic evaluative process the civil service statute contemplated for probationary employees, transforming it from "an experimental testing of fitness" to a "proof of serious misconduct." *Id.* at 126. See *Costa* v. *Selectmen of Billerica*, 377 Mass. 853, 860 (1979). The court emphasized that it was necessary to "take care not to hobble the employer unduly in the process of selection for tenure because dislodgement thereafter is notoriously difficult." *Leominster, supra* at 127, quoting from *Costa* v. *Selectmen of Billerica*, 377 Mass. at 860-861.

In the instant case, we identify no material conflict between the civil service law and the collective bargaining provisions or any distortion of the civil service law. Unlike in *Leominster*, the additional protection of the CBA is provided to provisional employees, not to tenure-track probationary employees, so no transforming or hobbling of the selection process for tenured employees will result. Also, as discussed *supra*, allowing an independent third party to determine whether a decision to discharge was justifiable promotes rather than distorts certain core values of the civil service law. As in *Fall River*, we do not see this decision as nondelegable. See *Dedham* v. *Dedham Police Assn.*, 46 Mass. App. Ct. at 421 ("nothing in the [civil service] law constrained [the parties'] choice. They were free to agree as they wished").[7]

Finally, this is not a case where the employee has sought to use both the civil service and the collective bargaining process to challenge her discharge. She elected to use the collective bargaining grievance procedure. She did not exercise her right to a name-clearing hearing pursuant to G. L. c. 31, § 41. Consequently, there is no danger of inconsistent decisions by the arbitrator and the appointing authority. Employees must, however, make a choice between the two procedures to avoid

---

[7]We are not, for example, dealing with the special concerns relating to the deployment of police officers. See, e.g., *Boston* v. *Boston Police Superior Officers' Fedn.*, 52 Mass. App. Ct. 296, 299 (2001).

such a conflict. See generally G. L. c. 150E, § 8 (any grievance procedure "culminating in final and binding arbitration. . . . shall, where such arbitration is elected by the employee . . . be the exclusive procedure"); G. L. c. 31, § 42; *Canavan* v. *Civil Serv. Commn.*, 60 Mass. App. Ct. 910 (2004).

*Conclusion.* The case is remanded to the Superior Court for the entry of a judgment consistent with our decision that there is no conflict between G. L. c. 31, § 41, and the collective bargaining agreement provisions in this case, and that therefore the arbitrator did not exceed his authority in determining that the dispute was arbitrable under the agreement.

*So ordered.*