Agnes, Peter W., J.
1.Introduction
The Plaintiff, City of Worcester (“City”), has filed a civil action in which it seeks to vacate an arbitration award which is based on a determination that the City violated Article 28 of a collective bargaining agreement (“CBA”) between the City and the defendant, Local 378, International Brotherhood of Police Officers (“police union”) by bypassing and thereby not promoting defendant Linda C. Jackson (“Jackson”) to the position of Sergeant on September 4, 1994. The arbitrator’s award provides that Jackson “shall be promoted effective retroactive to that date, and shall be made whole for all lost wages and other benefits up to the date of her superannuation retirement in December 2000.” City’s Memorandum of Law, Exhibit A at 18 (Arbitrator’s Award) (hereafter, “Arb. Award”). This court will treat the City’s motion as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Massachusetts Rules of Civil Procedure. See G.L.c. 150C, §14. See also Superior Court Standing Order 1-96(4) (as amended 2002) (governing claims for judicial review of administrative agency decisions and providing for the resolution of such claims by means of a motion for judgment on the pleadings). For the following reasons, the City’s motion is DENIED.
2.Procedural history
Jackson filed a grievance in this case on September 7, 1994 alleging that the City had violated Article 28 of the CBA. The City denied the grievance. On October 7, 1994, the police union notified the City that it had submitted the grievance to arbitration. The City responded by filing an application to stay the arbitration. See G.L.c. 150C, §2(b). After the stay was granted by this court, the matter was appealed. On July 18, 1995, the Appeals Court reversed the trial court and ruled that a “substantial and bona fide dispute” existed that was suitable for arbitration. The matter of whether the grievance was arbitrable was submitted to an arbitrator on the basis of a stipulation as to the facts. The arbitrator ruled that the grievance was arbitrable. See Defendant’s Memorandum of Law, Exhibit B. In August 1998, the City filed an action to vacate the arbitrator’s award. That case was dismissed for want of prosecution on June 4, 2001. Thereafter, a hearing before the arbitrator on the merits of the grievance took place. The decision which is the subject of this case was issued on August 28, 2003. See Plaintiffs Memorandum of Law, Exhibit A (Arbitration Award). The present case was filed on September 23, 2003. The present motion, however, was not filed by the City until September 9, 2006.
3.Stipulated facts
The parties stipulated to the following facts. During the period in question, Edward Gardella was the Chief of Police in Worcester and was supported by three Deputy Chiefs including Carlo Genatossio. The Worcester Police Department at the time consisted of 10 Captains, 29 Lieutenants, 55 Sergeants and 480 police officers. Arb. Award at 2. The City manager at the time was Thomas Hoover who was responsible for all hiring decisions including the hiring and promoting of police officers. In Worcester, the police chief reports to the city manager. Linda Jackson was hired as a police officer on January 22, 1972 and was so employed until the date of her superannuation retirement in December 2000. She holds a Master’s Degree in Criminal Justice and her experience includes service as a Petty Officer in the United States Coast Guard. On September 12, 1992, she took and passed the Civil Service examination for Police Sergeant. Her score was 86.84 which placed her in position 15 on the list of candidates for promotion to Police Sergeant. Arb. Award at 3.
4.
The final decision on promotions in Worcester is made by the City Manager on the basis of the “2n plus 1" formula which means that he may choose the first promotion from any of the top three names, the second promotion from any of the top five names, etc. ”In practice the City of Worcester generally promotes persons in the order that their names appear on the lists. The City has occasionally bypassed a person on a promotional list for Deputy Chief, Captain and Lieutenant, but prior to the bypass of the Complainant, the [City] had not bypassed a promotional candidate for Sergeant in at least fifteen years [under the administration of a prior city manager and prior chief of police). (Subsequent to the Complainant’s bypass, the City promoted twelve more Police Sergeants in 1995 and 1996 from names generated off a 1994 civil service promotional examination. There were not (sic) bypasses during those years either.)" Arb. Award at 3-4.
*602 5.
In November 1993, the city manager appointed 14 police officers to the rank of Police Sergeant by selecting the candidates in positions 1 to 14 on the Civil Service promotional list. On July 11, 1994, the City requested the appointment of four additional sergeants during the months of July and August. The Complainant returned to active duly on August 13, 1994 from injured-on-leave status. Based on the previous appointments, she was at the top of the promotional list. She was bypassed on the basis of the recommendation of former Chief Gardella who requested that the city manager appoint the next four candidates in a letter dated August 24, 1994. The promotional list in question expired on February 6, 1995 and was replaced with a list based on a subsequent examination. Arb. Award at 4.
6. Arbitrator’s findings of fact
In addition to the above stipulation of facts, the Arbitrator made findings of fact based on live testimony and documents submitted by the parties. With regard to the November 1993 promotion of 14 officers to the rank of Police Sergeant, it turns out that one of those appointed (George Wells) was initially not recommended for promotion by Chief Gardella. The stated basis for his decision was “undisclosed issues in Wells’ work record.” Arb. Award at 5. Police Sergeant Donald Cummings, who served as president of the union from 1991 to 1995, protested the chiefs plan to bypass officer Wells and insisted to City Manager Mulkern that Wells should be appointed because “the city had in the past always followed the promotional list in making appointments.” Officer Wells was promoted to Sergeant. Arb. Award at 5. Sergeant Cummings made the same point to Chief Gardella in August 1994 when the Complainant was not recommended for promotion despite being at the top of the list. The Chief did not change his position, and forwarded the names of the four officers below the Complainant. The arbitrator found that the City Manager rejected Cummings’s protests and promoted the four officers recommended by Chief Gardella.
Cummings met with the City Manager and argued that past practice required the appointment of Jackson the next highest scoring officer on the active Sergeants promotion list. City manager Hoover rejected Cummings protests and promoted the four officers recommended by Chief Gardella. Cummings testified that he was not familiar with Jackson’s work record, he had never supervised her, and was unaware of Gardella’s reason, if any, for bypassing Jackson. He was not privy to her departmental performance appraisals, and was unaware if she had received negative evaluations before taking the Sergeant’s exam. Cummings had participated in collective bargaining representing the Union for several rounds of bargaining and he could not recall any time when the Union or City offered any proposals with respect to promotions.
Arb. Award at 5-6. The Arbitrator also found that the experience of Lieutenant Robert Lotabon, a member of the Worcester Police Department who represented Local Union 504, IBPO in collective bargaining matters involving Sergeants, Lieutenants and Captains with the City, was involved in a 1997 case in which an officer was bypassed for promotion to the rank of Sergeant but ultimately succeeded in being promoting as a result of a grievance and an arbitration award. Arb. Award at 6, citing A.A.A. case No. 1139-0533-97 (Arbitrator Adomeit 1997) (hereafter, “Adomeit Arb.”).
7. Arbitrator’s rulings of law
Article 3 of the CBA (“Management Rights Clause”) provides:
Subject to General Laws Chapter 150E and to the provisions of this Agreement, the City shall not be deemed to have been limited in any way in the exercise of the regular and customary function of municipal management and shall be deemed to have retained and reserved, unto itself, all the power, authority and prerogatives of municipal management including, but not limited to, to operate and direct the affairs of the Department in all its various aspects; to direct the working forces; to plan, direct and control all the operations and services of the Department; to determine the methods, means organization, and number or (sic) personnel by which such operations and services are to be conducted; to assign and transfer employees; to schedule working hours and to assign overtime; to hire promote, demote, suspend, discipline, discharge or relieve employees due to lack of work or other legitimate reasons; to make and enforce reasonable rules and regulations; and to change or eliminate existing method, equipment or facilities, except to the extent expressly abridged by a specific provision of this Agreement.
Arb. Award at 7-8.
Article 28 of the CBA (“Protection of Existing Benefits”) provides that:
This Agreement shall not be construed to deprive an employee of any existing benefit granted by law and/or presently enjoyed by the employee, except as specifically abridged by this Agreement. Such existing benefits shall not be construed to any ad hoc benefit granted by a subordinate commander without the knowledge of the City or its Police Department.
Arb. Award at 8. The arbitrator correctly identified the issues as “whether the Management Rights clause of the contract clearly preserves the right to bypass candidates on the eligibility list, whether the contract is ambiguous and if there is a past practice requiring the City to promote strictly by the civil service list.” Arb. Award at 13. The arbitrator reasoned that Clause *603 3 of the CBA reserves to the City the right to decide when and if to make promotions, but is ambiguous about the procedure to be followed. He further reasoned that the authority of management to bypass candidates, see G.L.c. 31, §27, “is a permissible subject of bargaining.” Arb. Award at 13-14. In such a case, the arbitrator further reasoned that it is appropriate to examine the history of dealings between the parties, including whether there is a pattern of past promotional practices that establishes that the parties have adopted an alternative method for distinguishing between candidates competing for promotions. Arb. Award at 14. Here, the arbitrator found the existence of a “longstanding” agreement between the parties. With the exception of the defendant Jackson and the position of police chief (a position excluded from the coverage of G.L.c. 150E), “[t]he Union has presented a persuasive case that there exists a binding practice in the police department where police officers are promoted based on their rank on the civil service eligibility list whereby the city promotes based on the Civil Service eligibility list.” Arb. Award at 14. The one noted exception to this longstanding practice was a case from the “early 1980s” involving an officer who was promoted (presumably as a result of a bypass) without objection by the Union in order to achieve goals established by the Equal Employment Opportunity Commission. However, the arbitrator found that because this one exception was made to address anti-discrimination claims it did not negate the finding of a longstanding practice by the City of not engaging in a bypass. Arb. Award at 15. The arbitrator rejected the City’s argument that the finding of a past practice could not defeat the reservation of rights set forth in Clause 3 of the CBA because the parties had never explicitly bargained collectively over this question. Arb. Award at 15-16. The arbitrator also rejected the City’s claim that the “subject matter of promotions is not a benefit, but a (sic) operational method or management function.” Instead, he ruled that “the method of making promotions falls within the scope of the protection of benefits clause and is entitled to the protections afforded other benefits and working conditions not expressly addressed in the contract and protected as a matter for collective bargaining by G.L.c. 150E.” Arb. Award at 16. Finally, with regard to the City’s argument that notwithstanding the existence of a settled practice of promoting from the list and assuming that this is a benefit within the meaning of Clause 28 of the CBA, the City was justified in bypassing defendant Jackson because of her prior discipline and reprimand, the arbitrator ruled that it was not a reason that either the police chief or city manager advanced prior to the grievance, and, in any case, the incident was “stale and insubstantial” when compared to far more serious incidents involving other officers who were nonetheless promoted during the relevant time frame. Arb. Award at 17. Accordingly, the arbitrator ruled that the City violated Article 28 of the CBA.
8. Standard of review
The starting point of this court’s analysis must be G.L.c. 150E, §2, which provides in part, that “(e)mployees shall have the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives of their own choosing on questions of wages, hours, and other terms and conditions of employment . . .” Under G.L.c. 150E, §8, “(t]he parties may include in any written agreement a grievance procedure culminating in final and binding arbitration to be invoked in the event of any dispute concerning the interpretation or application of such written agreement.” Arbitration awards are subject to judicial review when “the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law.” G.L.c. 150C, §11(a)(3).
The Supreme Judicial Court has cogently explained the deference owed by courts to arbitration awards under this legislative scheme in these terms:
When parties agree to arbitrate a dispute, courts accord their election great weight. The strong public policy favoring arbitration requires us to uphold an arbitrator’s decision even where it is wrong on the facts or the law, and whether it is wise or foolish, clear or ambiguous. Our deference to the parties’ choice of arbitration to resolve their disputes is especially pronounced where that choice forms part of a collective bargaining agreement. In such cases, the Legislature has severely limited the grounds for vacating arbitration awards. See G.L.c. 150C, §11. See also School Comm. of Pittsfield v. United Educators of Pittsfield, 438 Mass. 753, 758 (2003) (“Arbitration has long been viewed as a particularly appropriate and effective means to resolve labor disputes”).
City of Boston v. Boston Police Patrolman’s Association, 443 Mass. 813, 818 (2005) (citations omitted).[1] See also Superradio Lmtd. v. Winstar Radio, 446 Mass. 330, 333-34 (2006).
The plaintiff invokes the so-called “conflicts” section of the public employee labor relations statute, G.L.c. 150E, §7(d), which provides that, if a collective bargaining agreement conflicts with any one of several enumerated statutory provisions, then the terms of the agreement prevail. “(S)tatutes not specifically enumerated in §7(d) will prevail over contrary terms in collective bargaining agreements.” See Chief Justice for Adm. & Management of Trial Court v. Office and Professional Employees Intern. Union, Local 6, AFL-CIO, 441 Mass. 620, 625 (2004) (citations omitted). One of the statutes not included in section 7(d) is G.L.c. 31, §27. However, it also is clear from cases cited by the plaintiff that not every conflict between a provision within a collective bargaining agreement and a statute not included in section 7(d) leads to the conclusion that the agreement is invalid. Instead, under *604 the standard enunciated in City of Fall River v. AFSCME Council 93, Local 3177, AFL-CIO, 61 Mass.App.Ct. 404, 411 (2004), a collective bargaining agreement is unlawful insofar as it creates a collective bargaining right which “directly and substantially conflicts” with a policy choice reflected in the civil service law. See also Leominster v. International Bhd. of Police officers, Local 338, 33 Mass.App.Ct. 121, 124-25 (1992), and cases cited. This is the principle underlying the decision in Chief of Police of Dracut v. Dracut, 357 Mass. 492, 502 (1970), where the Supreme Judicial Court observed that “[A]rticles of the agreement which impinge upon the power and authority of the chief to decide duty, vacation and leave assignments are null and void as to members of the police department.”
9. Whether the arbitrator’s decision directly and substantially conflicts with the city’s statutory right to bypass candidates for promotion under the Civil Service Law, G.L.c. 31, §27
The plaintiff City argues that the arbitrator’s decision is unlawful and in excess of his authority because he has interpreted the CBA in a manner that deprives the City of its statutorily guaranteed bypass rights under G.L.c. 31, §27. Defendant city’s brief at 6-13. G.L.c. 31, §27 provides, in part, that “[e]xcept as provided otherwise by section fifteen, if the administrator certifies from an eligible list the names of three persons who are qualified for and willing to accept appointment, the appointing authority, pursuant to the civil service law and rules, may appoint only from among such persons.” A collective bargaining agreement that sought to delegate the power of appointment to someone other than the “appointing authority,” or that sought to give the “appointing authority” discretion to select anyone on the eligible list for appointment would violate the principle of the City of Fall River case. Likewise, an arbitrator’s award based on such an interpretation of a collective bargaining agreement would be unlawful for the same reason. Here, on the other hand, the arbitrator’s award is not based on such an interpretation of the CBA. The defendants did not ask the arbitrator to disregard the policy choice made by the legislature in adopting the Civil Service Law and G.L.c. 31, §27 in particular. In the City of Worcester, the power of appointment rests with the city manager. The arbitrator’s award does not diminish the authority of the police chief, or the city manager to make this decision. Under the arbitrator’s decision, the plaintiff City retains the authority to make appointments and thus to determine whether there shall be a promotion from patrol officer to sergeant. Instead, the arbitrator found that the conduct of parties over a long period of time resulted in the creation of a benefit for members of the union to be promoted based on their rank on the civil service eligibility list.
The reasoning of the arbitrator in this case is consistent with City of Worcester v. Local 1009, International Association of Firefighters, 32 Mass.App.Ct. 1122 (1992) (unpublished Memorandum and Order cited by the defendant) in which a panel of the Appeals Court considered a case comparable to the present case in which the City of Worcester also maintained that an arbitrator’s award was unlawful and in conflict with G.L.c. 31, §27. In Local 1009, supra, the Appeals Court acknowledged the distinction between the legislative policy underlying §27 (reserving to the appointing authority the decision whether to promote and insuring a fair and merit-based process by limiting the appointing authority to a choice among candidates who are deemed by Civil Service to be qualified for the position) and the manner in which the city may exercise its discretion under the statute. “While the decision whether to fill the district chiefs vacancy at all belonged solely to the city . . . The city’s means of filling that vacancy could properly be ‘the subject of an enforceable provision in a collective bargaining agreement.’ ” Id.
Moreover, as this court observed in City of Worcester v. International Brotherhood of Police Officers, Local 504 et al., Superior Court No. C.A. 1997-1904 (Burnes, J.) (citations omitted) [9 Mass. L. Rptr. 534],
[P]romotional issues are reserved to the City pursuant to the Management Rights article of the Agreement; however, while it is true that the city retains managerial control over such things as staffing levels, assignments and definitions of duties, the means of implementing managerial decisions . . . may be the subject of an enforceable provision in a collective bargaining agreement.
The principal authority relied upon by the plaintiff is readily distinguishable from the present case. In City of Leominster v. International Brotherhood of Police Officers, Local 388, 33 Mass.App.Ct. 121 (1992), the Appeals Court held that a collective bargaining agreement conferring on a discharged provisional civil service employee the right to appeal to an arbitrator under a “just cause” standard (as opposed to the statutoiy requirement of a simple statement of reasons) was in direct and substantial conflict with a legislative policy choice embodied in G.L.c. 31, §34. Section 34, the Appeals Court observed, “is a mandatory provision designed to benefit the public, which the city may not waive.” Id. at 127. The principle animating the decision in City of Leominster is precisely the principle enunciated in City of Fall River, discussed above, and the principle acknowledged by and respected by the arbitrator in the present case — namely, that as a result of a good faith negotiation between a public employer and public employees in this context, the public employer can confer a benefit on the public employees, either by express agreement or by a course of conduct, that defines the manner in which the public employer exercises its discretion so long as the benefit does not *605 directly and substantially conflict with a policy choice set forth in legislation.
It avails the City nothing to argue that the process of selecting candidates for promotion may involve the exercise of discretion and judgment that may turn on subjective factors. See Plaintiff s Memorandum of Law at 10-13. In none of the cases cited by the plaintiff had the public employer engaged in a longstanding practice of promoting eligible candidates in the order of the rank on the Civil Service list. The City of Worcester could have chosen to reserve the right to exercise the discretion to bypass eligible candidates by not conferring on the defendants the benefit of having candidates for promotion selected in the order of their rank on the eligibility list. As the arbitrator in this case found, the City gave up that right by its longstanding practice. That forfeiture by the City in no way, however, directly and substantially interferes with the core requirements of G.L.c. 31, §27.[2] Thus, the court rejects the City’s position that “[u]nder the Arbitrator’s award, the City’s role in the selection process has been hobbled or transformed in violation of the statute.” Plaintiffs Memorandum of Law at 11.
This analysis is consistent with the following fundamental principles of public sector collective bargaining established by our appellate courts:
(1) Courts should interpret the civil service law and the collective bargaining law, as well as the agreements that arise out of the collective bargaining process, as a “harmonious whole.” Dedham v. Labor Relations Comm’n, 365 Mass. 392, 402 (1974);
(2) Courts should interpret collective bargaining agreements in a manner that promotes collective bargaining between the public employers and employees over the conditions and terms of employment. Chief Justice for Admn. & Mgmt. of the Trial Ct. v. Office and Professional Employees Intl. Union, Local 6, AFL-CIO, 441 Mass. 620, 630 (2004);
(3) While the determination of whether a collective bargaining agreement and the Civil Service law are in direct and substantial conflict is ultimately for the courts, the decision of an arbitrator on such questions is entitled to respectful consideration. Local No. 1710, Intl. Assn. of Firefighters, AFL-CIO v. Chicopee, 430 Mass. 417, 421 (1999).
10. Whether the plaintiff City was bound by its agreement with the defendants to promote candidates for sergeant in the order of their rank on the Civil Service eligibility list, in circumstances in which the highest ranking candidate has been subject to discipline
The plaintiff City argues in the alternative that even if it was bound by a longstanding practice to appoint candidates in the order of their rank on the eligibility list, it nonetheless enjoyed the power to exercise its bypass rights under G.L.c. 31, §27 because defendant Jackson had been subject to discipline two years earlier. For several reasons, it is not necessary for this court to decide whether there may be circumstances in which an employer in the position of the City of Worcester would have the right to disregard the longstanding practice and bypass a candidate for promotion on account of the candidate’s misconduct. See note 2 supra. First, as the arbitrator in this case found, there is a significant gap in the record which casts doubt on the bona fides of the plaintiffs claim that defendant Jackson’s disciplinary history had anything to do with its decision to bypass her. In 1992, defendant Jackson was disciplined “to seven days of punishment duty.” This was three years before her application for promotion. The basis for the discipline was that she was working a second job without permission of the Police Chief and doing so on certain days when she had obtained sick leave from the police department. Arb. Award at 12. She also was reprimanded for an incident of discourtesy. Arb. Award at 13. However, the defendant’s disciplinary record was not cited by the police chief or the city manager before the grievance was filed. Arb. Award at 17. When a bypass decision is made, it must be based on grounds that are “valid, substantive and reasonable.” Arb. Award at 17. Neither the police chief nor the city manager ever offered an explanation of how the disciplinary incidents in question affected defendant Jackson’s qualifications, capacity or suitability for promotion.
Second, the arbitrator found that the City promoted two other candidates to Sergeant in Worcester based on their rank on the eligibility list in circumstances in which the candidates had received a greater punishment for disciplinary infractions than defendant Jackson. Arb. Award at 17. Therefore, like the arbitrator, this court does not find that there is a credible basis in the record for the view that the City bypassed defendant Jackson because of her disciplinary record.
ORDER
The arbitrator’s decision that the plaintiff City violated the “Protection of Existing Benefits” clause (Article 28) of the collective bargaining agreement by disregarding a longstanding practice of promoting Worcester police officers to Sergeant in the order of their rank on the Civil Service eligibility list is supported by the evidence. The City has failed to establish that it bypassed the defendant on account of her disciplinary record. In violation of G.L.c. 31, §27, the City gave no reason for its bypass decision. The mere fact that a candidate for promotion has a disciplinary record is not ipso facto a sufficient reason to disregard a longstanding practice to promote candidates in the order of their rank on the Civil Service eligibility list. Even assuming that it had acted on account of defendant Jackson’s prior disciplinary record, the City acted arbitrarily and unlawfully because it promoted other eligible candidates in the past with more severe disciplinary records.
*606 For the above reasons, the arbitrator’s award in this case appropriately and lawfully interprets the collective bargaining agreement in question a manner that is consistent with and respectful of the authority conferred on the City by G.L.c. 31, §27. In light of defendant Jackson’s intervening retirement, the arbitrator’s remedy of awarding her promotion to the rank of Sergeant retroactive to September 4, 1994 with entitlement to all benefits and wages up to the date of her superannuation retirement in December 2000 is a reasonable and appropriate remedy that is within his power to grant and that is entitled to respect and enforcement by this court.

Only when an order by the arbitrator violates a clear and dominant public policy that is integral to the performance of the employee’s duty will the courts intervene and vacate the award. City of Boston, supra, 443 Mass. at 818-19. In City of Boston, the Supreme Judicial Court overruled an arbitrator’s award ordering a one-year suspension of a police officer instead of the termination which had been ordered by the City on grounds that the officer had engaged in “egregious” and “outrageous” conduct toward civilians, and described its action as “one of those ‘rare instances’ in which an arbitrator’s award must be vacated as contrary to ‘an explicit, well-defined, and dominant public policy.’ Eastern Associated Coal Corp. v. United Mine Workers, Dist. 17, 531 U.S. 57, 62, 63 (2000)." Id. at 818.

It is important to note, as discussed infra in paragraph 10 of the text of this decision, that enforcement of the arbitration award in this case does not require this court to rule that as a result of the longstanding practice of promoting candidates to the position of Sergeant on the Worcester Police Department in the order of their rank on the Civil Service eligibility list, the City has given up entirely its right to bypass candidates under G.L.c. 31, §27 regardless of the circumstances. The extent to which the City of Worcester may retain the authority to bypass candidates under G.L.c. 31, §27 despite the longstanding practice found by the arbitrator in this case is a question left for another day. In any event, as noted in paragraph 10 of the text infra, on the record before this court, the City has not demonstrated that it bypassed officer Jackson on account of her disciplinary record.